## STATE v. JOSEPH WELKE.

216 N. W. 2d 641.

March 1, 1974—No. 43554.

*Robert J. Milavetz,* for appellant.

*Keith M. Stidd,* City Attorney, and *Edward C. Vavreck,* Assistant City Attorney, for respondent.

PETERSON, JUSTICE.

Defendant was convicted of violating the Minneapolis obscenity ordinance, Minneapolis Code of Ordinances, § 870.080, by exhibiting and selling a magazine entitled "Kronus." [1] Two of the issues raised by defendant on this appeal merit consideration: (1) Whether the evidence, including "Kronus," should have been suppressed as impermissibly obtained by the arresting police officers and (2), more importantly, whether the conviction constitutionally may stand under any construction of the obscenity ordinance.

On the evening of January 29, 1970, two plainclothes police officers entered the Discount Book Store on Hennepin Avenue in downtown Minneapolis in which defendant, Joseph A. Welke, was employed as a clerk. After browsing through the store for several minutes, the officers selected three magazines, "Kronus," "Candy Boxes," and "Candida," the covers of which displayed nude women. The officers brought the magazines to a checkout counter where Welke was standing, and after some conversation with him, the officers purchased the magazines with "buy money" which their superiors had provided.

Having made their purchases, the officers left the store, conferred outside briefly with a third officer, and then reentered the bookstore with several other police officers. Welke was then placed under arrest. The officers thereupon conducted a search of the bookstore which lasted approximately 2 1/2 hours, during which they retrieved the "buy money" and, in addition, seized a large number of other magazines from the store. The officers did not have a search warrant.

■ Defendant made a pretrial motion for the suppression of evidence obtained by the search of the bookstore. At the conclu-

---

[1] Defendant was first convicted in the Municipal Court of Hennepin County. He thereafter obtained a trial de novo before a jury in the District Court of Hennepin County. This appeal is from the latter conviction and an order denying his post-trial motions.

sion of the pretrial Rasmussen hearing, the court stated that no ruling on the suppression motion was necessary "because there is no evidence sought to be introduced by search and seizure or by custodial interrogation." The state, at trial, introduced only the three magazines which had been purchased by the police officers and did not attempt to introduce any of the other materials seized. Although defendant was charged only with having sold "Kronus," no objection was made to the introduction of the other two magazines purchased, except to reassert that they were products of an unlawful search and seizure.

Defendant argues that the sale of the three magazines to the police officers was not a bona fide sale and that the illegality of the subsequent search of the bookstore requires the suppression and return of all materials, including the three magazines purchased. Whatever the subjective intent of the two officers may have been, however, the transaction by which they obtained three magazines in exchange for money cannot be considered a search or seizure. Purchases by undercover agents from willing sellers, in places far more private than a bookstore, were held in Lewis v. United States, 385 U. S. 206, 87 S. Ct. 424, 17 L. ed. 2d 312 (1966), not to violate the Fourth Amendment.

Defendant additionally made a post-trial motion to order the police officers to return all the materials. The determinative issue here is not whether the warrantless search of the bookstore and the massive seizure of materials which followed defendant's arrest was impermissible, but whether defendant has standing to raise the issue. He was a clerk without any ownership interest in the bookstore and, indeed, is no longer even employed by the store. The police officials of Minneapolis have declared that the materials would be returned to the owners upon their request. Since defendant does not appear to be "[a] person aggrieved by an unlawful search and seizure" within the meaning of Minn. St. 626.21, he had no standing, as the trial court properly ruled, to demand return of the seized materials.

■ The more crucial issue for decision is whether the convic-

tion constitutionally may stand under any construction of the Minneapolis obscenity ordinance, particularly in its application to this defendant. These issues arise for the first time in this state under the new tests of obscenity enunciated by the United States Supreme Court in Miller v. California, 413 U. S. 15, 93 S. Ct. 2607, 37 L. ed. 2d 419 (1973), and its companion cases.[2]

The obscenity ordinance defines the term "obscene" in the precise language of the constitutional tests formulated in Roth v. United States, 354 U. S. 476, 77 S. Ct. 1304, 1 L. ed. 2d 1498 (1957), by providing as follows:

"It is unlawful for any person knowingly to exhibit, sell, print, offer to sell, give away, circulate, publish, distribute, or attempt to distribute any obscene book, magazine, pamphlet, paper, writing, card, advertisement, circular, print, picture, photograph, motion picture film, play, image, instrument, statue, drawing, or other article which is obscene. 'Obscene' for the purpose of this section is defined as follows: Whether to the average person, applying contemporary community standards, the dominant theme of the material taken as a whole appeals to prurient interests." Minneapolis Code of Ordinances, § 870.080.

The obscenity tests of Roth, incorporated in the state obscenity statute as well as the Minneapolis obscenity ordinance, were subsequently made more stringent in A Book Named "John Cleland's Memoirs of a Woman of Pleasure" (commonly known as Fanny Hill) v. Attorney General, 383 U. S. 413, 419, 86 S. Ct. 975, 978, 16 L. ed. 2d 1, 6 (1966) (plurality opinion). That case added, as a third element, that to prove obscenity it must be es-

---

[2] Paris Adult Theatre I v. Slaton, 413 U. S. 49, 93 S. Ct. 2628, 37 L. ed. 2d 446 (1973); United States v. 12 200-Ft. Reels of Super 8MM. Film, 413 U. S. 123, 93 S. Ct. 2665, 37 L. ed. 2d 500 (1973); Kaplan v. California, 413 U. S. 115, 93 S. Ct. 2680, 37 L. ed. 2d 492 (1973); United States v. Orito, 413 U. S. 139, 93 S. Ct. 2674, 37 L. ed. 2d 513 (1973); Alexander v. Virginia, 413 U. S. 836, 93 S. Ct. 2803, 37 L. ed. 2d 993 (1973); Heller v. New York, 413 U. S. 483, 93 S. Ct. 2789, 37 L. ed. 2d 745 (1973); Roaden v. Kentucky, 413 U. S. 496, 93 S. Ct. 2796, 37 L. ed. 2d 757 (1973).

tablished the material is *utterly* without redeeming social value." This added element was thereafter effectively read into our state statute in State v. Carlson, 291 Minn. 368, 192 N. W. 2d 421 (1971).

In Miller v. California, 413 U. S. 15, 93 S. Ct. 2607, 37 L. ed. 2d 419 (1973), and its companion cases, the United States Supreme Court announced the formulation of new constitutional tests for obscenity. Abandoning the Roth-Memoirs tests as unworkable, the court reiterated the proposition that obscene material is not protected by the First Amendment and then enunciated the following standards (413 U. S. 23, 93 S. Ct. 2614, 37 L. ed. 2d 430):

"* * * State statutes designed to regulate obscene materials must be carefully limited. * * * As a result, we now confine the permissible scope of such regulation to works which depict or describe sexual conduct. That conduct must be specifically defined by the applicable state law, as written or authoritatively construed. A state offense must also be limited to works which, taken as a whole, appeal to the prurient interest in sex, which portray sexual conduct in a patently offensive way, and which, taken as a whole, do not have serious literary, artistic, political, or scientific value.

"The basic guidelines for the trier of fact must be: (a) whether 'the average person, applying contemporary community standards' would find that the work, taken as a whole, appeals to the prurient interest * * *; (b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law; and (c) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value. We do not adopt as a constitutional standard the 'utterly without redeeming social value' test of Memoirs v. Massachusetts, [383 U. S. 413, 419, 86 S. Ct. 975, 978, 16 L. ed. 2d 1, 6] * * *."

The most significant difference in the new formulation is the requirement that the sexual conduct, the depiction or description

of which is prohibited, must be specifically defined by the applicable state law, as written or as authoritatively construed. Although the court declined to propose regulatory schemes, it gave the following examples of what a state statute could define for regulation (413 U. S. 25, 93 S. Ct. 2615, 37 L. ed. 2d 431):

"(a) Patently offensive representations or descriptions of ultimate sexual acts, normal or perverted, actual or simulated.

"(b) Patently offensive representations or descriptions of masturbation, excretory functions, and lewd exhibition of the genitals."

The Minneapolis obscenity ordinance manifests a clear legislative intent to proscribe obscenity to the extent consistent with constitutional limitations.[3] "Obscene," for purposes of government regulation, is no longer meaningfully defined except in constitutional terms. Its use in an ordinance or statute is there·fore susceptible of authoritative judicial construction conformable with the guidelines and authorized regulatory pattern articulated in Miller.[4] Construction of this sort, moreover, seemingly was invited by Miller, in which the Chief Justice said for the court (413 U. S. 24, note 6, 93 S. Ct. 2615, 37 L. ed. 2d 430):

"We do not hold * * * that all States * * * must now enact new obscenity statutes. Other existing state statutes, as construed heretofore or hereafter, may well be adequate."[5]

---

[3] In Roth v. United States, 354 U. S. 476, 485, 77 S. Ct. 1304, 1309, 1 L. ed. 2d 1498, 1507 (1957), Mr. Justice Brennan took note of "the universal judgment that obscenity should be restrained, reflected in the international agreement of over 50 nations, in the obscenity laws of all of the 48 States, and in the 20 obscenity laws enacted by the Congress from 1842 to 1956."

[4] The prohibition of the ordinance is identical in text to the state obscenity statute, Minn. St. 617.241, except only as to punishment. The construction of the term "obscene" in the Minneapolis ordinance is accordingly authoritative with respect to the use of the same term in the state obscenity statute.

[5] The United States Supreme Court has itself adopted this course of judicial construction of statute as noted in United States v. 12 200-Ft.

The purpose of the ordinance, as stated in its first sentence, is to proscribe any article "which is obscene." The second sentence, as a definition in constitutional terms, simply recites the constitutionally-limited Roth definition of "obscene" in effect

Reels of Super 8MM. Film, 413 U. S. 123, 130, note 7, 93 S. Ct. 2665, 2670, 37 L. ed. 2d 500, 507 (1973): "* * * [W]e do have a duty to authoritatively construe federal statutes where ' "a serious doubt of constitutionality is raised" ' and ' "a construction of the statute is fairly possible by which the question may be avoided." ' United States v. Thirty-seven Photographs, 402 U. S. 363, 369 [91 S. Ct. 1400, 1404, 28 L. ed. 2d 822, 830] (1971) (opinion of White, J.), quoting from Crowell v. Benson, 285 U. S. 22, 62 [52 S. Ct. 285, 296, 76 L. ed. 598, 619] (1932). If and when such a 'serious doubt' is raised as to the vagueness of the words 'obscene,' 'lewd,' 'lascivious,' 'filthy,' 'indecent,' or 'immoral' as used to describe regulated material in 19 U. S. C. § 1305(a) and 18 U. S. C. § 1462, see United States v. Orito, [413 U. S. 139, 140, note 1, 93 S. Ct. 2674, 2676, 37 L. ed. 2d 513, 516 (1973)], we are prepared to construe such terms as limiting regulated material to patently offensive representations or descriptions of that specific 'hard core' sexual conduct given as examples in Miller v. California, ante, [413 U. S. 15, 25, 93 S. Ct. 2607, 2615, 37 L. ed. 2d 419, 431 (1973)]. See United States v. Thirty-seven Photographs, supra, at 369-374 [91 S. Ct. 1404-1407, 28 L. ed. 2d 829-833 (1971)] (opinion of White, J.). Of course, Congress could always define other specific 'hard core' conduct." The Fifth Circuit Court of Appeals in United States v. Thevis, 484 F. 2d 1149 (5 Cir. 1973), thereafter held that the definition of Miller was a gloss that had been added to 18 USCA, § 1462.

The response of state appellate courts to this precedent has not been uniform. Courts of six states have either presently construed or deemed their prior construction of state legislation consistent with Miller: Price v. Commonwealth, 214 Va. 490, 201 S. E. 2d 798 (1974); Pap v. State, 281 So. 2d 600 (Fla. App. 1973), and Rhodes v. State, 283 So. 2d 351 (Fla. 1973); State ex rel. Keating v. A Motion Picture Film Entitled "Vixen," 35 Ohio St. 2d 215, 301 N. E. 2d 880 (1973), and State ex rel. Sensenbrenner v. Adult Book Store, 35 Ohio St. 2d 220, 301 N. E. 2d 695 (1973); State ex rel. Chobot v. Circuit Court, 61 Wis. 2d 354, 212 N. W. 2d 690 (1973); People v. Enskat, 33 Cal. App. 3d 900, 109 Cal. Rptr. 433 (1973); State v. J-R Distributors, Inc. 82 Wash. 2d 584, 512 P. 2d 1049 (1973). Courts of three states declined to "rewrite" existing legislation and have simply

at the time of its adoption—upon which, in State v. Carlson, *supra,* we subsequently engrafted the constitutionally refined definition of Memoirs.

We now authoritatively construe and hold the word "obscene," as used in this ordinance and like legislative enactments regulating or prohibiting obscenity, to embrace articles and publications which are patently offensive representations or descriptions of ultimate sexual acts, normal or perverted, actual or simulated, and patently offensive representations or descriptions of masturbation, excretory functions, and lewd exhibition of the genitals.

A defendant may be convicted under this, or like ordinance or statute, if the trier of fact may find under the evidence:

(1)   That the material depicts or describes, in a patently offensive way, sexual conduct as explicated above;

(2)   that to the average person, applying contemporary community standards, the dominant theme of the material, taken as a whole, appeals to the prurient interest in such matters; and

(3)   that the material, taken as a whole, lacks serious literary, artistic, political, or scientific value.

Whether, to "the average person applying contemporary community standards" the material is "patently offensive" or "appeals to prurient interest" does not require the assistance of expert testimony and is a question of fact for the trier of fact to determine from the material itself, when placed in evidence,[6]

---

declared it unconstitutional: State v. Wedelstedt, 213 N. W. 2d 652 (Iowa, 1973); Mohney v. State, 300 N. E. 2d 66 (Ind. 1973), and Stroud v. State, 300 N. E. 2d 100 (Ind. 1973); State v. McNutt, 287 So. 2d 478 (La. 1973); State v. Shreveport News Agency, Inc. 287 So. 2d 464 (La. 1973), and State v. Gulf States Theatres of Louisiana, Inc. 287 So. 2d 496 (La. 1973).

[6] The state in this case was not permitted to offer police officers as experts on "contemporary community standards" but defendant was permitted to offer an expert witness who testified to the results of a public opinion poll on attitudes toward obscenity in the metropolitan area of Minneapolis. "A jury," as Mr. Justice Brennan wrote, dissenting in Kingsley Books, Inc. v. Brown, 354 U. S. 436, 448, 77 S. Ct. 1325, 1331,

Miller v. California, 413 U. S. 15, 30, 93 S. Ct. 2607, 2618, 37 L. ed. 2d 419, 434 (1973); Paris Adult Theatre I v. Slaton, 413 U. S. 49, 56, 93 S. Ct. 2628, 2634, 37 L. ed. 2d 446, 456 (1973). Whether a work, "taken as a whole, lacks serious literary, artistic, political, or scientific value," Miller v. California, 413 U. S. 15, 24, 93 S. Ct. 2607, 2615, 37 L. ed. 2d 419, 431 and is no more than a pretense of such value[7] should be discernible to a reasonable person who appraises it with a sensitive regard for freedom of expression. A jury's finding of obscenity is, of course, subject in borderline cases both to the judgment of the trial court and this court's ultimate power independently to review constitutional claims.

The jury in this case found that the magazine "Kronus" was obscene, based on instructions according to the then-prevailing Roth-Memoirs tests. "Kronus" was devoid of textual content, consisting exclusively of photographs of women who, for all practical purposes, were nude and who were grossly postured so as to give prominent display to the genital regions. Implicit in the jury's verdict were findings that, to the average person, applying contemporary community standards, the dominant

1 L. ed. 2d 1469, 1478 (1957), "represents a cross-section of the community and has a special aptitude for reflecting the view of the average person." We need not now determine whether "community" consists of a geographical area or governmental subdivision smaller than the state as a whole or, indeed, whether it may be different where a state statute rather than a municipal ordinance is the basis of prosecution. It is clear only that the term no longer means the nation as a whole. Miller v. California, 413 U. S. 15, 30, 93 S. Ct. 2607, 2618, 37 L. ed. 2d 419, 434 (1973).

7 The value that will redeem a prurient piece that affronts contemporary community standards, to paraphrase the apt words of Mr. Justice Heffernan in State v. I—A Woman—Part II, 53 Wis. 2d 102, 118, 191 N. W. 2d 897, 906 (1971), under the Roth-Memoirs test, is not "a miniscule value, a mere scintilla of social value, an 'iota,' or infinitesimal value," but is "a social value that is discernible to a reasonable finder of fact, is demonstrable, and not conjectural." Cf. State v. Ray, 292 Minn. 104, 109, 193 N. W. 2d 315, 318 (1971).

theme of the magazine taken as a whole appeals to prurient interest and that the magazine was utterly without redeeming social value.[8] Had our present explicit definition of the word "obscene," as used in the obscenity ordinance, been available as a basis for the trial court's instructions, the jury could well have found the "Kronus" photographs to be a "lewd exhibition of the genitals."

■ The conviction, nevertheless, cannot stand because defendant did not have that clear notice of the legislative proscription which fundamental fairness requires. The necessity of a clear warning is particularly important, moreover, when a line is to be drawn between protected and unprotected speech.[9] The sev-

---

[8] The new Miller guideline by which the trier of fact must determine "whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value," Miller v. California, 413 U. S. 15, 24, 93 S. Ct. 2607, 2615, 37 L. ed. 2d 419, 431 (1973), seems less demanding on the prosecution than the former Memoirs test of "utterly without redeeming social value." A Book Named "John Cleland's Memoirs of a Woman of Pleasure" v. Attorney General, 383 U. S. 413, 418, 86 S. Ct. 975, 977, 16 L. ed. 2d 1, 6 (1966). This new test, therefore, might subject to criminal penalties materials not so subject at the time of defendant's arrest. Defendant, however, had the benefit of the court's instruction according to the more stringent Memoirs standard.

[9] The United States Supreme Court, recently addressing the vice of vagueness in Grayned v. City of Rockford, 408 U. S. 104, 108, 92 S. Ct. 2294, 2298, 33 L. ed. 2d 222, 227 (1972), said: "* * * Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory application. Third, but related, where a vague statute 'abut[s] upon sensitive areas of basic First Amendment freedoms,' it 'operates to inhibit the exercise of [those]

eral opinions in Miller and its companion cases were concerned both with avoiding infringements on protected speech and with affording fair notice to potential defendants. In expressing the majority formulation of workable judicial standards to achieve these dual objectives, Mr. Chief Justice Burger stated in Miller (413 U. S. 27, 93 S. Ct. 2616, 37 L. ed. 2d 432) :

"Under the holdings announced today, no one will be subject to prosecution for the sale or exposure of obscene materials unless these materials depict or describe patently offensive 'hard core' sexual conduct specifically defined by the regulating state law, as written or construed. We are satisfied that these specific prerequisites will provide fair notice to a dealer in such materials that his public and commercial activities may bring prosecution."

Neither as written nor as construed at the time of this defendant's arrest did the ordinance comport with the requirement of specificity imposed by Miller. Since fair notice is the basic rationale for the requirement of specifically defined sexual conduct, we are not persuaded that a present construction of the ordinance affords requisite notice with respect to a sale made over 4 years ago.[10] As the court noted in Miller, "[a]part from the initial formulation in the Roth case, no majority of the Court has at any given time been able to agree on a standard to determine what constitutes obscene, pornographic material subject to regulation under the States' police power." 413 U. S. 22, 93 S. Ct. 2614, 37 L. ed. 2d 429. If the court itself was unable to

---

freedoms.' Uncertain meanings inevitably lead citizens to ' "steer far wider of the unlawful zone" * * * than if the boundaries of the forbidden areas were clearly marked.' "

[10] We are not unmindful of the footnote comment in Miller (413 U. S. 24, note 6, 93 S. Ct. 2615, 38 L. ed. 2d 430) that existing statutes, "as construed heretofore or *hereafter,* may well be adequate." (Italics supplied.) We do not think a construction *after* Miller was intended to apply to an alleged offense *before* Miller. Cf. Bouie v. City of Columbia, 378 U. S. 347, 84 S. Ct. 1697, 12 L. ed. 2d 894 (1964).

formulate a precise definition of the materials subject to regulation, it would be unfair to assume that this defendant should have known precisely what materials were subject to regulation under the ordinance.[11] The public interest is served by today's notice to those engaged in the sleazy business of pornography that they may no longer take refuge under an umbrella of constitutional uncertainty.

Ordinances and statutes, much more than constitutional principles, are changeable. We construe them only in present text, frequently searching for legislative intent within a constitutional context. Of course, if we have today misperceived legislative intent or if it at any time may become the legislative intent to abolish any or all restraints upon obscene publications, the legislative body will manifest its intent by other enactments.

Reversed.

OTIS, JUSTICE (concurring in the result).

All that is necessary for decision in this appeal is our unanimous holding that the conviction "cannot stand because defendant did not have that clear notice of the legislative proscription which fundamental fairness requires." That should end the matter. The remainder of the opinion is pure dictum, as the majority must concede. We are simply prognosticating what rules we will adopt when future appeals are taken without having the benefit of a trial at which parties may offer evidence

---

[11] We did undertake in State v. Carlson, 294 Minn. 433, 202 N. W. 2d 640 (1972), to find meaning in the many post-Redrup (Redrup v. New York, 386 U. S. 767, 87 S. Ct. 1414, 18 L. ed. 2d 515 [1967]), summary reversals of obscenity convictions, including State v. Hoyt, 286 Minn. 92, 174 N. W. 2d 700 (1970), reversed, Hoyt v. Minnesota, 399 U. S. 524, 90 S. Ct. 2241, 26 L. ed. 2d 782 (1970). We there defined the term "obscene" to embrace at least "hard-core pornography" as that term was defined by Mr. Justice Stewart, dissenting in Ginzburg v. United States, 383 U. S. 463, 499, 86 S. Ct. 942, 957, 16 L. ed. 2d 31, 54 (1966). Our decision, however, was vacated and remanded, Carlson v. Minnesota, 414 U. S. 953, 94 S. Ct. 263, 38 L. ed. 2d 206 (1973), for reconsideration in the light of Miller v. California, *supra*.

and argue the law, and the trial court may render its decision and present a record for review. I cannot accept this approach to a problem of these dimensions, one which has confused and confounded lawyers, judges, sociologists, and law-enforcement officers as much as any other issue in the criminal law.

By prognosticating our intended disposition of future litigation, we do not bind ourselves or others to the rules we suggest but, on the contrary, may seriously mislead those who rely on them. I submit that we do not have such special expertise that we can confidently adopt rules of law in this complex area without permitting the bar or the legislature to have a voice in formulating policy.

The United States Supreme Court in Miller v. California, 413 U. S. 15, 93 S. Ct. 2607, 37 L. ed. 2d 419 (1973), did not and could not require our legislature or courts to adopt rules of law which make obscenity punishable within the limits the Supreme Court has defined. That court's authority is confined to specifying what state laws pass Federal constitutional muster. It cannot mandate state laws governing pornography or any other subject. Nevertheless, the majority opinion adopts the extreme perimeters of laws which the Supreme Court holds, by way of dictum also, it would tolerate, and we engraft those limits verbatim onto ordinances and statutes which are no longer viable under the Miller ruling.

It is not our function either to draft criminal laws to replace those struck down by Miller or to construe our constitution in a vacuum. Under our Federal system it is the exclusive responsibility of this court, and no other court, to make the ultimate decision of what legislation conforms to the Minnesota Constitution and what does not. No consideration has been given in the majority opinion to the validity of the rules proposed in Miller measured against the provisions of the Minnesota Constitution. On that important issue, Miller is not controlling but constitutes only prestigious precedent.

In sum, I respectfully protest against abdicating our preroga-

tive and our duty to scrutinize and decide for ourselves these important issues on a case-by-case basis. By pursuing the course we adopt, we deny the public its right to notice of what rules of conduct we intended to consider in this decision. More important, we invade a legal thicket without the benefit of hearings, such as the legislature requires, and without the benefit of a consideration of briefs and arguments by counsel who are experienced and knowledgeable in dealing with this difficult and volatile field of human behavior.

Accordingly, except as to the result, I dissent from the majority opinion and would defer, until presented in a traditional adversary proceeding, the resolution of issues not now before us.