THE STATE OF NEW JERSEY, PLAINTIFF, v. LESLIE ROS-
ENBERG, GARY JOSEPH RHEAULT, NICHOLAS F. DEL
PRETE AND THE SET SUN CORPORATION, DEFEND-
ANTS.

Superior Court of New Jersey
Law Division
(Criminal)

Decided July 13, 1976.

Mr. Herbert S. Kassner of the New York Bar argued the motion for defendants (Messrs. Kassner & Detsky, attorneys; Mr. A. Joseph Kane, of counsel).

Mr. Richard P. Rodbart argued the motion for the State (Mr. Edward W. McGrath, Prosecutor Union County, attorney).

DREIER, J. C. C., Temporarily Assigned. Defendants are the owners and operators of an adult book store in Union Township, allegedly engaged in the dissemination of sexually oriented literature. As a result they have been charged in a multi-count indictment with violating *N. J. S. A.* 2A:115–2 which reads in pertinent part:

> Any person who, without just cause, utters or exposes to the view or hearing of another, or possesses with intent to utter or expose to the view or hearing of another, any obscene or indecent book, publication, pamphlet, * * * or any person who shall sell, import, print, publish, loan, give away, or distribute or possess with intent to sell, print, publish, loan, give away, * * * or offer for sale any obscene or indecent book, publication, pamphlet, * * * is guilty of a misdemeanor.

Defendants have moved, pursuant to *R.* 3:10–3, to challenge the constitutionality of the statute.

Although other arguments were advanced and disposed of at oral argument, the most troublesome issues raised by defendants are (1) the continuing viability of the "stopgap" interpretation of the statute propounded in *State v. DeSantis,*

65 *N. J.* 462 (1974) ; (2) whether the statute is contrary to rights secured by Art. I, par. 6 of the New Jersey Constitution and the First and Fourteenth Amendments of the Federal Constitution for vagueness, and (3) whether it is overbroad, permitting discriminatory enforcement, contrary to the command of the Equal Protection Clause of the Fourteenth Amendment. It should be noted at the outset that the allegations of both unconstitutional vagueness and overbreadth are directed to the language of *N. J. S. A.* 2A:115–2, quoted above, not to *N. J. S. A.* 2A:115–1.1, the definitional portion of the statute recently construed in *DeSantis.*

## I. Definitional Amendment by *DeSantis.*

In *De Santis* our Supreme Court reformed the statutory definition of obscenity, since the language of the present New Jersey statute does not comport with the reformulated test propounded by the United States Supreme Court in *Miller v. California,* 413 *U. S.* 15, 93 *S. Ct.* 2607, 37 *L. Ed.* 2d 419 (1973), reh. den. 414 *U. S.* 881, 94 *S. Ct.* 26, 38 *L. Ed.* 2d 128 (1973). In *Miller* the Supreme Court abandoned the requirement established earlier in *Memoirs v. Massachusetts,* 383 *U. S.* 413, 86 *S. Ct.* 975, 16 *L. Ed.* 2d 1 (1966), providing that sexually oriented literature could not be proscribed unless, among other things, it was found to be "utterly without redeeming social value." The infirmity of the *Memoirs* test was that it imposed an affirmative duty on the prosecution to prove a negative; a task which the *Miller* court found to be "virtually impossible to discharge under our criminal standards of proof." 413 *U. S.* at 22, 93 *S. Ct.* at 2613. Under *Miller,* a finding of obscenity now requires three elements:

The basic guidelines for the trier of fact must be: (a) whether "the average person, applying contemporary community standards" would find that the work, taken as a whole, appeals to the prurient interest, * * *; (b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable

state law; and (c) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value. * * * [at 24, 93 *S. Ct.* at 2614]

*Miller* also noted that state law could so regulate obscene material either as the law was "written or construed." 413 *U. S.* at 25, 93 *S. Ct.* 2607.

Applying these added requirements, the *DeSantis* court had the choice of nullifying the quoted portion of our statute — thereby leaving an interim void — or supplying a construction within the bounds of the *Miller* (65 *N. J.* at 472–473) interpretation of the Federal Constitution (as had been done in Minnesota and New Hampshire; see *State v. Welke,* 298 *Minn.* 402, 216 *N. W.* 2d 641, 646 (Sup. Ct. 1974), and *State v. Harding,* 114 *N. H.* 335, 320 *A.* 2d 646 (Sup. Ct. 1974)). The court chose the latter course and performed judicial surgery, grafting the additional language on to the statute and then construing the statute to meet the specific requirements of *Miller.* The court, quoting from *Welke,* reasoned that the history of our obscenity statute "leaves no room for doubt that the Legislature which adopted it intended * * * 'to proscribe obscenity to the fullest extent consistent with constitutional limitations.'" 65 *N. J.* at 473. See generally, *State v. Hudson County News Co. (Hudson County News Co. [II]),* 41 *N. J.* 247, 265 (1963); *Coleman v. Wilson,* 123 *N. J. Super.* 310, 318 (Ch. Div. 1973), *Bantam Books Inc. v. Melko,* 25 *N. J. Super.* 292 (Ch. Div. 1953), mod. 14 *N. J.* 524 (1954) (containing an excellent history of obscenity legislation).

■■ Defendants now question the continued viability of this "stopgap" measure, given the absence of any curative legislation since the decision in *DeSantis.* Though it is an interesting point, this court will take judicial notice of the fact that there have been and continue to be efforts by the Legislature to enact an amendment to the obscenity statute in conformance with the dictates of *Miller.* See, *e. g.,* Sen. Concurr. Res. No. 74 (1974 Sess.); A. 1750 (1974 Sess.);

S. 1468 (1974 Sess.) ; S. 1472 (1974 Sess. — passed in Senate May 27, 1975) ; Sen. Concurr. Res. No. 49 (1976 Sess.) ; A. 134 (1976 Sess.) ; S. 1120 (1976 Sess.) ; S. 1247 (1976 Sess. — second reading May 19, 1976, laid over August 12, 1976), copies of which have been secured and examined by the court. The Legislature has not ignored the suggestions of the Supreme Court, or indicated its rejection of the same. Unless the Legislature rejects the amendments to the statute or enacts standards inimical to the *DeSantis* tests, the "stop-gap" construction of the statute will control.

## II. Vagueness and Overbreadth

Defendants' primary attack is directed to the language of *N. J. S. A.* 2A :115–2. Specifically, defendants contend that the phrase "without just cause" renders the statute vague, and, as described below, overbroad. It is alleged to be vague in the sense that the conduct proscribed by the statute is not defined with sufficient precision to inform a possible violator of what constitutes impermissible conduct; and overbroad in that it encompasses conduct which may not be prohibited constitutionally.

It is well settled that where a statute is not sufficiently explicit to give fair notice of what conduct is prohibited, the statute will be invalidated as being void for vagueness. *Lanzetta v. New Jersey,* 306 *U. S.* 451, 453, 59 *S. Ct.* 618, 83 *L. Ed.* 888 (1939) ; *U. S. v. Harriss,* 347 *U. S.* 612, 617, 74 *S. Ct.* 808, 98 *L. Ed.* 989 (1954) ; *Bouie v. City of Columbia,* 378 *U. S.* 347, 352, 84 *S. Ct.* 1697, 12 *L. Ed.* 2d 894 (1964). *Cf. Broadrick v. Oklahoma,* 413 *U. S.* 601, 607, 93 *S. Ct.* 2908, 37 *L. Ed.* 2d 830 (1973).

But in *State v. Hudson County News Co. (Hudson County News Co. [I]),* 35 *N. J.* 284 (1961), the court upheld the validity of this phrase "without just cause" in the face of a due process vagueness attack. In construing the clause, the court noted :

"* * * In the light of its contextual purpose and common understanding we consider the exception to be reasonably certain and fairly informative; it properly protects those who may possess and distribute obscene material in the course of *bona fide* scientific, medical or comparable research or study or in the course of law enforcement activities or in other like circumstances where the nature of the possession and distribution is not related to the appeal to prurient interest. * * *" [at 297]

Mindful of this narrowing construction placed upon the statute by *Hudson County News Co.* [*I*], defendants argue that the phrase still does not prevent the statute from having a chilling effect on the exercise of First Amendment rights, because of the inability of a member of the public to determine what situations and which class of people are excluded from the prohibition of the clause. As a result, defendants claim, a person could be inhibited in the dissemination of expressive material.

To support the vagueness argument defendants also rely upon *Smith v. Goguen,* 415 *U. S.* 566, 94 *S. Ct.* 1242, 39 *L. Ed.* 2d 605 (1974). There the appellee, who had worn a small, cloth version of the United States flag sewn to the seat of his trousers, was convicted under a Massachusetts statute which imposed criminal liability on anyone who publicly "treats contemptuously" the United States flag. In voiding the conviction the court found it significant that the phrase was devoid of a narrowing state court interpretation. But more importantly, it noted that "Statutory language of such a standardless sweep allows policemen, prosecutors and juries to pursue their personal predilections." 415 *U. S.* at 575, 94 *S. Ct.* at 1248. As such, the phrase, "treats contemptuously," represented an abdication of the Legislature's responsibilities for setting standards in the criminal law. As Mr. Justice Black said in *Gregory v. City of Chicago,* 394 *U. S.* 111, 120, 89 *S. Ct.* 946, 951, 22 *L. Ed.* 2d 134 (1969), "* * * under our democratic system of government, lawmaking is not entrusted to the moment-to-moment judgment of the policeman on his beat." In sum, "Where inherently vague statutory language permits such selective law

enforcement, there is a denial of due process." *Smith, supra,* 415 *U. S.* at 576, 94 *S. Ct.* at 1249.

Even vague language, however, need not be struck down where its vagueness is immaterial because the alleged conduct does not fall within the "grey" area. As the court noted in *Broadrick v. Oklahoma, supra* (a political activity proscription case) :

> "* * * Moreover, even if the outermost boundaries of § 818 may be imprecise, any such uncertainty has little relevance here, where appellants' conduct falls squarely within the "hard core" [no pun intended] of the statute's proscriptions and appellants concede as much. [Citing cases]. [413 *U. S.* at 608, 93 *S. Ct.* at 2914]

And *cf. State v. Vaccaro,* 142 *N. J. Super.* (App. Div. 1976), where the term, "in good faith," was held to provide an ascertainable standard for the dispensing of drugs by a physician, against defendants' argument that the vagueness of the standard gave him absolute immunity for his prescriptions.

Considering the nature of the material here alleged to have been sold, and the apparent ease by which the State here will be able to show that the purchases do not fall within the "scientific, medical or comparable research or study * * *" exceptions of *Hudson County News Co.* [*I*], the vagueness argument must fall in this case.

Defendants next urge that the statute is overbroad in its language. A similar facial attack was treated in *Broadrick, supra,* as follows:

> * * * [Plaintiffs] maintain that the statute is overbroad and purports to reach protected, as well as unprotected conduct, and must therefore be struck down on its face and held to be incapable of any constitutional application. We do not believe that the overbreadth doctrine may appropriately be invoked in this manner here.
>
> Embedded in the traditional rules governing constitutional adjudication is the principle that a person to whom a statute may constitutionally be applied will not be heard to challenge that statute on the ground that it may conceivably be applied unconstitutionally to others, in situations not before the Court. [citing cases]. A closely related

principle is that constitutional rights are personal and may not be asserted vicariously. \* \* \* [413 *U. S.* at 610, 93 *S. Ct.* at 2915]

But these rules have an exception in First Amendment areas. *Dombrowski v. Pfister,* 380 *U. S.* 479, 486, 85 *S. Ct.* 1116, 14 *L. Ed.* 2d 22 (1965). As the court in *Broadrick v. Oklahoma, supra,* noted:

> \* \* \* Litigants, therefore, are permitted to challenge a statute not because their own rights of free expression are violated, but because of a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression.
>
> Such claims of facial overbreadth have been entertained in cases involving statutes which by their terms, seek to regulate "only spoken words." \* \* \* Overbreadth attacks have also been allowed where the Court thought rights of association were ensnared in statutes which, by their broad sweep, might result in burdening innocent associations. \* \* \* Facial overbreadth claims have also been entertained where statutes, by their terms, purport to regulate the time, place, and manner of expressive or communicative conduct, \* \* \* and where such conduct has required official approval under laws that delegated standardless discretionary power to local functionaries, resulting in virtually unreviewable prior restraints on First Amendment rights. \* \* \*
>
> \* \* \* Application of the overbreadth doctrine in this manner is, manifestly, strong medicine. It has been employed by the Court sparingly and only as a last resort. Facial overbreadth has not been invoked where a limiting construction has been or could be placed upon the challenged statute. \* \* \* [413 *U. S.* at 612–613, 93 *S. Ct.* at 2916]

It is apparent that the New Jersey court in *Hudson County News Co.* [*I*] had not considered at least some of the additional points raised by defendants herein, although clearly the court there placed a "limiting construction" on the statute. Despite the necessity that a compelling state interest be shown whenever a State seeks to justify a statute or regulation limiting First Amendment freedoms, *N.A.A. C.P. v. Button,* 371 *U. S.* 415, 438, 83 *S. Ct.* 328, 9 *L. Ed.* 2d 405 (1963), established rules nevertheless mandate that this court follow *Hudson County News Co.* [*I*], with regard to the proper framework within which the constitu-

tionality of a statute must be evaluated. As was stated in *Kochman v. Keansburg Bd. of Ed.*, 124 *N. J. Super.* 203 (Ch. Div. 1973):

A legislative enactment is presumed to be constitutional, and the burden is on the party challenging it to prove otherwise. *Jamouneau v. Harner*, 16 *N. J.* 500, 515 (1954). A statute will not be declared invalid unless it is plainly in contravention of a constitutional mandate or prohibition. Even though a statute may be open to a construction which would render it unconstitutional or permit its unconstitutional application, it is the duty of the court to construe the statute so as to render it constitutional if it is reasonably susceptible of such a construction. *State v. Profaci*, 56 *N. J.* 346, 349–350 (1970). If a statute is reasonably appropriate in its overall approach, it will be upheld notwithstanding that it may be invalid in its application in special circumstances or fringe areas. *State v. Monteleone*, 36 *N. J.* 93, 99 (1961). Of two interpretations of the language of a statute, the one that renders the act constitutional will be deemed to express the legislative intent. *Clifton v. Passaic County Board of Taxation*, 28 *N. J.* 411, 422 (1958). *In sum, a legislative act will not be declared void unless its repugnancy to the Constitution is clear beyond a reasonable doubt. Harvey v. Essex County Board of Chosen Freeholders*, 30 *N. J.* 381, 388 (1959). [at 208; emphasis supplied]

See also, *State v. Hudson County News Co.* [*I*], *supra*, 35 *N. J.* at 294–295, concerning the presumption of constitutionality of this statute, as against the due process argument, although the First Amendment arguments advanced by defendants were not there considered.

So limited by *DeSantis* defining what is proscribed, and by *Hudson County News Co.* [*I*] defining who is exempt from the proscription, *N. J. S. A.* 2A:115–2 is neither vague nor overbroad, nor does it place unfettered discretion in the hands of law enforcement officials. The judicially expanded guidelines of the statute provide adequate standards for enforcement. Despite this court's opinion as to method employed by the Supreme Court in *DeSantis* to resuscitate an admittedly defective statute that regulates only private transactions between adults who choose to enter into them (*cf. State v. J. O.*, 69 *N. J.* 574 (1976)), it is traditionally not for a trial court to substitute its views of legislative intention

for those of the State's highest tribunal. Suffice it to say that the evils of pornography appear to have been adequately proscribed by *N. J. S. A.* 2A:115–1.6 *et seq.* (sales to persons under 18) and 2A:115–2.1 *et seq.* (public communication or display of obscene material), both passed subsequent to the enactment of the statute under challenge here.

Defendants' motion is denied.