STATE of Minnesota,
Petitioner/Appellant,

v.

Willard LeRoy DAVIDSON,
Jr., Respondent.

No. CX–90–1304.

Supreme Court of Minnesota.

Feb. 28, 1992.

Hubert H. Humphrey, III, Atty. Gen., Jocelyn F. Olson, Asst. Atty. Gen., St. Paul and Julius E. Gernes, Winona Co. Atty., Ann E. Merchlewitz, Asst. Co. Atty., Winona, for petitioner/appellant.

John Stuart, State Public Defender, Cathryn Middlebrook, Asst. State Public Defender, Minneapolis, for respondent.

Randall D.B. Tigue, Deborah Moore Gilman, Minnesota Civil Liberties Union, Minneapolis, amicus curiae for MN Civil Liberties Union.

Paul D. Baertschi, Minneapolis, and Robert W. Peters, Morality in Media, Inc., New York City, amicus curiae for Morality in Medica, Inc.

Alan E. Searns, Len L. Munsil, Phoenix, Ariz., and Thomas W. Prichard, St. Paul,

amicus curiae for Nat. Family Legal Foundation and The Berean League.

Marjorie Heins, ACLU Art Censorship Project, New York City, amicus curiae for ACLU Art Censorship Project.

TOMLJANOVICH, Justice

In this appeal, the State asks us to overturn a split decision of the court of appeals holding that the state's obscenity statute, Minn.Stat. § 617.241, is void for vagueness under art. I, § 7 of the Minnesota Constitution, thereby invalidating respondent's conviction for distributing obscene materials. Respondent cross appeals on the grounds that (1) the statute violates the free speech/press clause of Minn. Const. art I, § 3; (2) that the statute is overbroad in violation of the state due process clause, Minn. Const. art I, § 7; (3) that the statute violates the right of privacy guaranteed under the state constitution; (4) that the evidence was insufficient as a matter of law to support respondent's conviction; and (5) that respondent was denied a fair trial by a variety of evidentiary rulings.

We hold that Minn.Stat. § 617.241 passes state constitutional muster in all respects. We reject respondent's claim of insufficient evidence and uphold the challenged trial court rulings. We reverse the court of appeals and reinstate respondent's conviction.

In November 1988, a citizens group complained to Winona police about the sale of hard-core pornography at the Ultimate Bookstore. A police detective was assigned to investigate, and on March 20, 1989, he visited the store. Outside, he observed a sign advertising X-rated movies and another stating that persons must be at least 18 to enter. Inside, he observed several racks of magazines and several booths for coin-operated videos. The magazine covers all depicted sexual acts, visible through clear plastic wrappers.

The officer talked with respondent, the store manager who was working at the counter. The officer bought eight magazines, which were entered into evidence. They were entitled: "Cum Eaters," "Oral Women II," "Horny Women," "Hot for Cock," "Wet Pussy Lips," "Hard and Wet No. II," "Girls on the Make," and "Hard Video No. 4." The magazines feature explicit color photographs of vaginal intercourse, anal intercourse, digital penetration and oral-genital sex. Two days later, the officer returned to the store and asked respondent about the coin-operated video machines in the booths. He was told that the movies play about five minutes for 50 cents. He entered a booth, deposited two quarters and watched a video for 10 minutes, observing numerous sex acts.

On March 23, 1989, police executed a search warrant at the Ultimate Bookstore and seized the video "Krazy for You." In addition, police videotaped and photographed the store's interior to show the kinds of items for sale and how they were displayed.

At trial, respondent called Dr. Janice Amberson, a psychologist and consultant who has treated sex offenders, marital groups and people with sexual dysfunction. Dr. Amberson testified that in her opinion the seized materials depicted normal sexual conduct between consenting adults, which was not shameful or degrading. She stated her opinion that healthy sex encompasses any mutually enjoyable act between consenting adults. She said sex becomes unhealthy if it involves force or a wide disparity in maturity. She testified that she would use materials like those at issue to treat patients, although she has not done so.

The defense also called the manager of a mainstream video rental store that includes an adult movie section. The manager testified that in the previous three years the store had 3,000 to 5,000 members, from all walks of life, and accounts with area schools. She testified that half of all rentals were from the adult section. The trial court denied respondent's request to call Ronald Anderson, a University of Minnesota sociology professor. He would have testified as an expert on public opinion sampling and the margin of error when six

jurors try to discern "community standards."

Respondent was convicted of gross misdemeanor distribution or sale of obscene material in violation of Minn.Stat. § 617.-241. He was sentenced to 91 days in jail, all stayed, and a fine of $3,000, of which $2,500 was stayed for two years. A splintered court of appeals reversed. *State v. Davidson*, 471 N.W.2d 691 (Minn.App. 1991). Judges Randall and Amundson, writing separately, held the obscenity statute unconstitutionally vague. They also held the statute was not overbroad and that respondent had not been denied a fair trial. They did not address respondent's arguments that the obscenity statute (1) violates Minn. Const. art. I, § 3; (2) that the statute violates the right to privacy; and (3) that the conviction was not supported by the evidence. Judge Huspeni dissented. She would have upheld the trial court in all respects.

■ We begin our analysis by pointing out that Minnesota's obscenity statute withstands scrutiny under the federal Constitution. Minn.Stat. § 617.241 provides:

Subd. 2(a): It is unlawful for a person, knowing or with reason to know its contents and character, to:

(a) exhibit, sell, print, offer to sell, give away, circulate, publish, distribute or attempt to distribute any obscene material.

Subd. 1(a): "Obscene" means that the work, taken as a whole, appeals to the prurient interest in sex and depicts or describes in a patently offensive manner sexual conduct and which, taken as a whole, does not have serious literary, artistic, political, or scientific value. In order to determine that a work is obscene, the trier of fact must find:

(i) that the average person, applying contemporary community standards, would find that the work, taken as a whole, appeals to the prurient interest in sex;

(ii) that the work depicts sexual conduct specifically defined by clause (b) in a patently offensive manner, and

(iii) that the work, taken as a whole, lacks serious literary, artistic, political or scientific value.

Subd. 1(b) [defining sexual conduct]:

(i) An act of sexual intercourse, normal or perverted, actual or simulated, including genital-genital, anal-genital, or oral-genital intercourse, whether between human beings or between a human being and an animal.

(ii) Sadomasochistic abuse, meaning flagellation or torture by or upon a person who is nude or clad in undergarments or in a sexually revealing costume or the condition of being fettered, bound, or otherwise physically restricted on the part of one so clothed or who is nude.

(iii) Masturbation, excretory functions, or lewd exhibition of the genitals including any explicit, close-up representation of a human genital organ.

(iv) Physical contact or simulated physical contact with a clothed or unclothed pubic areas or buttocks of a human male or female, or the breasts of the female, whether alone or between members of the same or opposite sex or between humans and animals in an act of apparent sexual gratification.

This statute satisfies federal guarantees of free speech and press, due process and privacy because Minn.Stat. § 617.241 tracks, virtually verbatim, the United States Supreme Court's obscenity cases, particularly *Miller v. California*, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973). Therefore, the statute is invalid only if the demands of the state constitution exceed those of the federal Constitution. We will address respondent's claims one at a time.

*Vagueness*

■ The defendant argues, and two court of appeals judges held, that the "community standards" element of Minn.Stat. § 617.241 makes it void for vagueness, in violation of the state constitution. The argument is that unless s/he is a mind reader, a person in respondent's position cannot

know in advance whether his or her conduct is illegal.

■ Minn. Const. art. I, § 7 provides that no person "shall be held to answer for a criminal offense without due process of law * * *." And it has been held that due process requires that criminal statutes be sufficiently clear and definite to warn a person of what conduct is punishable. *State v. Simmons*, 258 N.W.2d 908, 910 (Minn.1977). The goal is to prevent arbitrary, standardless enforcement. *Kolender v. Lawson*, 461 U.S. 352, 357, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903 (1983). Due process will bar an obscenity conviction if the defendant does not have fair warning of what materials are prohibited. *State v. Welke*, 298 Minn. 402, 411, 216 N.W.2d 641, 648 (1974).

The Supreme Court has rejected the argument that "community standards" is unconstitutionally vague. *See Miller*, 413 U.S. at 27, 93 S.Ct. at 2616; *Hamling v. United States*, 418 U.S. 87, 115, 94 S.Ct. 2887, 2906, 41 L.Ed.2d 590 (1974); *Smith v. United States*, 431 U.S. 291, 309, 97 S.Ct. 1756, 1768, 52 L.Ed.2d 324 (1977) (4–1–4 plurality decision). So respondent can prevail only if more process is due under art. I, § 7 than under the federal fourteenth amendment.

We have stated that in appropriate cases we will construe liberties more broadly under the state constitution than under the federal, although we will not do so lightly. *See State v. Hamm*, 423 N.W.2d 379, 382 (Minn.1988) (six-member juries violate state constitution); *State v. Gray*, 413 N.W.2d 107, 111 (Minn.1987) (determination of fundamental rights not limited by federal Constitution); *State v. Hershberger*, 462 N.W.2d 393, 397 (Minn.1990) (Minnesota Constitution provides greater religious liberty than first amendment); *State v. Russell*, 477 N.W.2d 886 (Minn.1991) (Minnesota equal protection analysis under art. I, § 2 is more demanding than federal).

As for due process, we need not decide in this case whether more process is due under the Minnesota Constitution than under the federal Constitution. Whatever the reach of state due process might ultimately

be, it does not reach as far as the court of appeals stretched it. Accordingly, we reverse the court of appeals on this issue, although not without some hesitation. We agree that the "community standards" element of Minn.Stat. § 617.241 lacks precision, but we don't agree that its inexactness is constitutionally fatal. We are satisfied that the statute's proscription of depictions and descriptions of specific sexual acts gives ample warning of what conduct is prohibited. " 'That there may be marginal cases in which it is difficult to determine the side of the line on which a particular fact situation falls is no sufficient reason to hold the language too ambiguous to define a criminal offense.' " *Roth v. United States*, 354 U.S. 476, 491–92, 77 S.Ct. 1304, 1312–13, 1 L.Ed.2d 1498 (1957) (*quoting United States v. Petrillo*, 332 U.S. 1, 7, 67 S.Ct. 1538, 1542, 91 L.Ed. 1877 (1947)).

■ We next must determine whether any imprecision in the statute promotes arbitrary and discriminatory enforcement. This is the more important element of our vagueness analysis. *Kolender*, 461 U.S. at 358, 103 S.Ct. at 1858. A statute must offer guidance to law enforcement officials limiting their discretion as to what conduct is allowed and what is prohibited. *State v. Newstrom*, 371 N.W.2d 525, 528 (Minn. 1985). In this case, we are satisfied that the statute gives law enforcement officials ample guidance as to what conduct is prohibited. Again, by specifically listing the prohibited depictions and descriptions, the statute put law enforcement personnel on notice of what material is subject to prosecution. We hold that the statute gives law enforcement officials sufficient guidance to withstand a vagueness challenge.

### Free speech/press

■ Article I, § 3 of the Minnesota Constitution provides:

The liberty of the press shall forever remain inviolate, and all persons may freely speak, write and publish their sentiments on all subjects, being responsible for the abuse of such right.

Respondent argues that "all subjects" necessarily includes obscenity. To determine whether the state constitution was intended to protect obscenity, both parties agree that it is necessary to look at the legislature's position at the time the constitution was adopted. The territorial obscenity law at the time the state constitution was adopted reads as follows:

> If any person shall import, print, publish, sell, or distribute any book, or any pamphlet, ballad, printed paper or other thing containing obscene language, or obscene prints, pictures, figures, or other descriptions manifestly tending to the corruption of the morals of youth, or shall introduce into any family, school, or place of education, or shall buy, procure, receive, or have in his possession any such book, pamphlet, ballad, printed paper, or other thing either for the purpose of loan, sale, exhibition, or circulation, or with intent to introduce the same into any family, school, or place of education, he shall be punished by imprisonment in the County jail, not more than six months, or by a fine not exceeding two hundred dollars.

Rev.St. (Terr.) 1851 ch. 107, § 11 (later codified at Pub.St.1858 ch. 96, § 11). Appellant contends that this statute was a general prohibition against obscenity, showing the legislature's intent to outlaw it. Respondent contends that the language acknowledges the lawful existence of obscenity and aims only to keep it from children.

We need not settle this battle of statutory interpretation because the answer can be found in the plain language of the constitution. No matter how broad the freedom to speak and write might be, art. I, § 3 allows the state to hold responsible those who abuse the right. The question is whether obscenity is such an abuse. In an earlier obscenity case, *State v. Oman*, 261 Minn. 10, 110 N.W.2d 514 (1961), we held

that obscenity was not protected by the first amendment, and that a prior obscenity statute was "not violative of the Constitution of the United States or of this state." *Id.* at 19, 110 N.W.2d at 521. In another context, this court said the art. I, § 3 protection for speech is "no more extensive in this case" than under the first amendment. *State v. Century Camera, Inc.*, 309 N.W.2d 735, 738 n. 6 (Minn.1981).

The Supreme Court has held that obscenity is not protected speech. *Roth*, 354 U.S. at 485, 77 S.Ct. at 1309. We see no reason to apply our constitution differently. Accordingly we hold that while art. I, § 3 of the Minnesota Constitution may offer broader protection than the federal first amendment, such protection does not extend to obscenity.[1]

### Overbreadth

This argument is easily dismissed and we hold that there is no overbreadth problem with Minn.Stat. § 617.241. For the overbreadth doctrine to apply, the statute must be substantially overbroad; that is it must reach protected as well as unprotected speech/conduct. *Houston v. Hill*, 482 U.S. 451, 458, 107 S.Ct. 2502, 2507–08, 96 L.Ed.2d 398 (1987). In this opinion we have stated that obscenity is not protected expression, and that the obscenity statute is not unconstitutionally vague. It follows that Minn.Stat. § 617.241 only reaches those materials which are obscene and therefore not protected. There has been no showing whatsoever that the statute reaches protected expression. As we understand it, respondent is arguing that Minn.Stat. § 617.241 is overbroad because it prohibits the dissemination of material to consenting adults and because it has a chilling effect on dissemination of legal materials that fall close to the line of obscenity.

As to the first point, respondent is arguing in the wrong forum. Whether the state should outlaw the distribution of ob-

---

1. Most other state supreme courts facing the same issue have found obscenity unprotected. *See City of Portland v. Jacobsky*, 496 A.2d 646, 648 (Me.1985); *People v. Ford*, 773 P.2d 1059 (Colo.1989); *State v. Reece*, 110 Wash.2d 766, 757 P.2d 947, 953 (1988) *cert. denied*, 493 U.S. 812, 110 S.Ct. 59, 107 L.Ed.2d 26 (1989); *People v. Neumayer*, 405 Mich. 341, 275 N.W.2d 230, 238 (1979); and *City of Urbana ex rel. Newlin v. Downing*, 43 Ohio St.3d 109, 539 N.E.2d 140, 146 (1989). The sole exception we have found is *State v. Henry*, 302 Or. 510, 732 P.2d 9 (1987).

scene material to consenting adults is a matter for the legislature, not this court. So long as the statute only reaches obscene materials, we have no role to play in this issue. As for any chilling effect, we believe that concern is addressed by our responsibility to review the record in each case to ensure that trial courts do not find obscenity where materials have serious literary, political, scientific or artistic value. *See Jenkins v. Georgia,* 418 U.S. 153, 94 S.Ct. 2750, 41 L.Ed.2d 642 (1974).

### Privacy

■ The right to privacy under the Minnesota Constitution protects only "fundamental rights." *Gray,* 413 N.W.2d at 111. But the privacy guaranteed under art. I, §§ 1, 2 and 10 is broader than the privacy right read into the comparable federal constitutional provision. *Jarvis v. Levine,* 418 N.W.2d 139, 147–49 (Minn.1988).

■ Under the federal constitution, the right to privacy prohibits the government from criminalizing the possession of obscene materials by a person in his/her home. *Stanley v. Georgia,* 394 U.S. 557, 564–65, 89 S.Ct. 1243, 1247–48, 22 L.Ed.2d 542 (1969). But the right to private possession does not prevent the government from controlling obscene material in commerce. *United States v. 12 200–Ft. Reels of Super 8mm Film,* 413 U.S. 123, 128, 93 S.Ct. 2665, 2668–69, 37 L.Ed.2d 500 (1973); *United States v. Reidel,* 402 U.S. 351, 91 S.Ct. 1410, 28 L.Ed.2d 813 (1971). Respondent asks this court to reject the reasoning of *Reidel* and *12 200–Ft. Reels* and find that the right to privately possess obscene materials necessarily extends to the right to obtain, thereby protecting the seller/distributor. As authority for that proposition, respondent cites *State v. Kam,* 69 Haw. 483, 748 P.2d 372, 380 (1988), in which the Hawaii Supreme Court invalidated the state's obscenity statute based on an explicit privacy provision of the state constitution, Haw. Const. art. I, § 6.

We reject that approach and hold that the right to privacy does not extend to commercial transactions in obscenity. Even if private possession of obscenity

were a fundamental right under *Gray,* it would not necessarily follow that such a right extends to the acquisition, for neither buyer nor seller has a privacy right at the point of sale. *See Stall v. State,* 570 So.2d 257, 260 (Fla.1990), *cert. denied sub nom. Florida v. Long,* —— U.S. ——, 111 S.Ct. 2888, 115 L.Ed.2d 1054 (1991).

To summarize, we find that Minn.Stat. § 617.241 satisfies the Minnesota Constitution in all respects addressed by this case. Accordingly, we reject respondent's constitutional claims and turn to the questions of whether respondent's conviction was supported by the evidence and whether certain rulings by the trial court denied him a fair trial.

■ To sustain respondent's conviction, the state must have proven beyond a reasonable doubt that (1) the evidence depicted sexual acts specifically proscribed by Minn. Stat. § 617.241 (1990); (2) applying contemporary community standards, the sexual conduct was patently offensive; (3) that the average person, applying contemporary community standards, would find that the material, taken as a whole, appealed to the prurient interest in sex; and (4) the material, taken as a whole, lacked serious literary, artistic, political or scientific value.

■ In reviewing sufficiency of the evidence, we give a great deal of deference to the jury, and a verdict will not be disturbed "if the jury, acting with due regard for the presumption of innocence and for the necessity of overcoming it by proof beyond a reasonable doubt, could reasonably conclude that a defendant was proven guilty of the offense charged." *State v. Alton,* 432 N.W.2d 754, 756 (Minn.1988). A reviewing court also must assume "the jury believed the state's witnesses and disbelieved any evidence to the contrary." *State v. Moore,* 438 N.W.2d 101, 108 (Minn.1989). But because of free speech implications, review of an obscenity conviction is less deferential and in close cases appellate courts will independently review the material found to be obscene. *Jacobellis v. Ohio,* 378 U.S. 184, 190, 84 S.Ct. 1676, 1679, 12 L.Ed.2d 793 (1964); *Jenkins,* 418 U.S. at 161, 94

S.Ct. at 2755; *Welke*, 298 Minn. at 410, 216 N.W.2d at 647; and *State v. Carlson*, 291 Minn. 368, 192 N.W.2d 421 (1971). In this case, it is undisputed that the seized materials depict the proscribed conduct. So we will focus on the other elements of the offense.

### Patent offensiveness

 To be patently offensive, it has been said that the material must go beyond customary limits of candor. *Miller*, 413 U.S. at 31, 93 S.Ct. at 2618–19. There is no question but that the depictions of sexual activity in this case are as candid as is photographically possible. Nothing is left to the imagination. The jury, which was in the best position to apply community standards, found the materials patently offensive. We have no basis on which to decide otherwise.

### Prurient interest

 The Supreme Court has defined a prurient interest in sex as a morbid, shameful interest in sex. *Brockett v. Spokane Arcades, Inc.*, 472 U.S. 491, 504–05, 105 S.Ct. 2794, 2802, 86 L.Ed.2d 394 (1985). Respondent argues that because the materials at issue in this case portray consensual, mutually pleasurable sexual conduct, they appeal to a normal, healthy interest in sex rather than a prurient interest. Respondent's expert witness testified to that effect. But it is apparent from the verdict that the jury rejected that testimony and determined that the average person, applying contemporary community standards, would find that the materials appeal to the prurient interest in sex. We think respondent's argument has some merit, but we are not prepared to hold as a matter of law that graphic depictions and descriptions of consensual, mutually pleasurably sexual acts do not appeal to the prurient interest in sex. In this case, the jury's determination was adequately supported by the evidence and we uphold it.

### Serious value

 In deciding whether allegedly obscene material has serious literary, politi-

cal, artistic or scientific value, a jury is to apply a reasonable person standard rather than community standards. *Pope v. Illinois*, 481 U.S. 497, 500–01, 107 S.Ct. 1918, 1920–21, 95 L.Ed.2d 439 (1987). We need not go into a lengthy analysis to decide that the jury's verdict was well-supported in this area. The seized magazines have no particularly redeeming qualities. They feature page after page of explicit sexual activity with an occasional caption. Even the most liberal construction would be strained to find an "idea" in the magazines' text. The captions are limited to crude expressions of sexual desire, *i.e.*, who wants what where, when, how, how much and how often. We have no problem accepting the jury's determination that the magazines lack serious literary, artistic, political or scientific value.

 The video "Krazy for You" presents a slightly more difficult question. There is no plot, poor production values, bad acting and not much of a script. But in between all the bumping and grinding, there is some dialogue, dumb as it is, from which it would be possible to draw political messages disparaging health-care professionals and police officers. While one might stretch to find political value in the video, we cannot stretch so far as to find *serious* political value. That being the case, we have no reason to disagree with the jury's determination that the material lacked serious value. As a result, we hold that the evidence was sufficient to support respondent's conviction.

 We next address respondent's challenges to various rulings by the trial court. These complaints are disposed of easily. Appellant first challenges the trial court's decision to disallow expert testimony on the margin for error when a six-person jury panel attempts to ascertain and apply community standards. Trial courts have broad discretion in deciding whether to admit the testimony of even qualified experts. *State v. Helterbridle*, 301 N.W.2d 545, 547 (Minn. 1980). The touchstone is whether the testimony will be helpful to the fact finder. *Id.;* Minn.R.Evid. 702. We agree with the trial court that such expert testimony would not

have been helpful and affirm the decision to exclude it.

■ Respondent also contends the trial court erred by failing to instruct the jury that if it could not ascertain a community standard it must acquit. This argument has been raised and rejected elsewhere. *See United States v. Easley,* 927 F.2d 1442, 1449 (8th Cir.1991), *cert. denied sub nom. Hunter v. U.S.,* — U.S. —, 112 S.Ct. 199, 116 L.Ed.2d 158 (1991). Certainly it was not error for the trial court to refuse this instruction. *See State v. Daniels,* 361 N.W.2d 819, 831 (Minn.1985) (refusal to give instruction within the sound discretion of trial court). We find no abuse of discretion on these facts and affirm the trial court's ruling.

■ Respondent next argues that the trial court erred in framing its "community standards" jury instructions in terms of "acceptance" rather than "tolerance." While this argument has some surface appeal, it has no basis in law because the Supreme Court appears to use acceptance and tolerance interchangeably. *See Miller,* 413 U.S. at 32, 93 S.Ct. at 2619; *New York v. Ferber,* 458 U.S. 747, 761 n. 12, 102 S.Ct. 3348, 3357 n. 12, 73 L.Ed.2d 1113 (1982); *Smith v. United States,* 431 U.S. 291, 297–98, 305, 97 S.Ct. 1756, 1761–62, 52 L.Ed.2d 324. *See also Easley,* 927 F.2d at 1446. Although the plain meaning of tolerance might better reflect the appropriate considerations in obscenity cases, we do not believe it was an error for the trial court to speak in terms of acceptance.

■ Respondent's last contention is that the video "Krazy for You" should have been suppressed as evidence because the state failed to initiate a pre-seizure hearing before a judge. This argument has no merit. The purpose of the pre-seizure adversary hearing is to avoid prior restraint on what might ultimately be found to be protected expression. *See City of Duluth v. Wendling,* 306 Minn. 384, 389, 237 N.W.2d 79, 82 (1975). As the court of appeals correctly noted, that implicates the first amendment, not the fourth. By ordering the seized material returned to respondent, the trial court avoided any first amendment harm. There was no basis for suppressing the evidence.

Having determined that respondent's conviction does not violate the state constitution, was supported by the evidence and was not the result of an unfair trial, we reverse the court of appeals and reinstate the conviction.