STATE OF MINNESOTA

IN SUPREME COURT

A23-0158

Court of Appeals

Procaccini, J.
Concurring, Hennesy, Procaccini, JJ.
Took no part, Gaïtas, J.

State of Minnesota,

Respondent,

vs.

Filed: April 30, 2025
Office of Appellate Courts

Eloisa Rubi Plancarte,

Appellant.

_____

Keith Ellison, Attorney General, Saint Paul, Minnesota; and

Michael T. Walters, Olmsted County Attorney, James E. Haase, Senior Assistant County Attorney, Rochester, Minnesota, for respondent.

Cathryn Middlebrook, Chief Appellate Public Defender, Adam Lozeau, Assistant State Public Defender, Saint Paul, Minnesota, for appellant.

Jess Braverman, Grace Moore, Gender Justice, Saint Paul, Minnesota, for amicus curiae Gender Justice.

Devin T. Driscoll, Claire E. Beyer, Bridget A. Duffus, Fredrikson & Byron, P.A., Minneapolis, Minnesota; and

Shauna Kieffer, Jill Brisbois, Minnesota Association of Criminal Defense Lawyers, Minneapolis Minnesota; and

Alicia Granse, Teresa Nelson, American Civil Liberties Union of Minnesota, Minneapolis, Minnesota, for amici curiae American Civil Liberties Union of Minnesota and Minnesota Association of Criminal Defense Lawyers.

_____

1

1.    To "lewdly" expose oneself in violation of Minnesota Statutes section 617.23, subdivision 1(1) (2024), a person must engage in conduct of a sexual nature.

2.    The State did not present evidence sufficient to prove that the appellant "lewdly" exposed her "body, or the private parts thereof" under section 617.23, subdivision 1(1), because the record does not show that the appellant engaged in conduct of a sexual nature.

Reversed.

## O P I N I O N

PROCACCINI, Justice.

This case arises from appellant Eloisa Rubi Plancarte's misdemeanor conviction under the indecent exposure statute, Minnesota Statutes section 617.23, subdivision 1(1) (2024).  The relevant provision prohibits a person from "willfully and lewdly" exposing their "body, or the private parts thereof."  Respondent State of Minnesota charged Plancarte under this provision for exposing her breasts in a gas station parking lot.  Plancarte moved to dismiss the charge, arguing that the State lacked probable cause for her arrest because breasts are not "private parts" under the statute and, even if they were, her exposure was not "lewd."  In the alternative, Plancarte argued that the State violated her constitutional right to equal protection under the law by prosecuting her for conduct that men are freely permitted to engage in.  The district court denied her motion, and the parties proceeded to a stipulated-evidence trial under Minnesota Rule of Criminal Procedure 26.01,

subdivision 3. The district court found Plancarte guilty and convicted her of misdemeanor indecent exposure under section 617.23, subdivision 1(1).

Plancarte appealed, renewing the arguments she made to the district court. The court of appeals affirmed Plancarte's conviction in a divided opinion. Because we conclude that the word "lewdly," as used in section 617.23, subdivision 1(1), refers to conduct of a sexual nature, and because the record does not show that Plancarte engaged in such conduct, we reverse.

**FACTS**

The facts in this case are short and undisputed: On July 28, 2021, the Rochester Police Department received a report that a woman was walking around a gas station parking lot with her breasts exposed. An officer responded to the call and saw Plancarte in the parking lot with her breasts exposed. The officer recognized Plancarte from two encounters earlier that week. During those encounters, the officer saw Plancarte exposing her underwear on one occasion, and her breasts and her underwear on another occasion.

The officer stopped Plancarte and asked her why she kept exposing herself. Plancarte replied, "I think Catholic girls do it all the time." Plancarte then worried about how she would get home and stated, "I dance at the biker club. I'm a stripper." The officer said, "Well, you can't strip in the middle of public." Plancarte responded, "Yeah, but they should account for me at the club, shouldn't they?" The officer arrested Plancarte and later searched her purse, where the officer found a vial containing cocaine.

3

The State charged Plancarte with indecent exposure in violation of Minnesota Statutes section 617.23, subdivision 1(1). The indecent exposure statute prohibits a variety of conduct:

> Subdivision 1. **Misdemeanor.** A person who commits any of the following acts in any public place, or in any place where others are present, is guilty of a misdemeanor:
>
> (1) willfully and lewdly exposes the person's body, or the private parts thereof;
>
> (2) procures another to expose private parts; or
>
> (3) engages in any open or gross lewdness or lascivious behavior, or any public indecency other than behavior specified in this subdivision.
>
> . . . .
>
> Subd. 4. **Breastfeeding.** It is not a violation of this section for a woman to breastfeed.

Minn. Stat. § 617.23, subds. 1, 4 (2024). The State charged Plancarte only under subdivision 1(1), alleging that she willfully and lewdly exposed her breasts. The State also charged Plancarte with fifth-degree possession of a controlled substance in violation of Minnesota Statutes section 152.025, subdivision 2(1) (2022).

This appeal concerns only the indecent exposure charge, which Plancarte moved to dismiss. She argued that the officer did not have probable cause to arrest her for exposing her breasts because, under the indecent exposure statute, breasts are not "private parts," and the exposure of breasts, without an additional showing, is not "lewd." Plancarte argued alternatively that the indecent exposure statute is unconstitutionally vague and overbroad and that her conviction under the statute violated her right to equal protection under the law.

4

The district court denied Plancarte's motion, and the parties proceeded to a stipulated-evidence trial under Minnesota Rule of Criminal Procedure 26.01, subdivision 3.[1]  The stipulated evidence included, in relevant part:  (1) the police report from Plancarte's arrest; (2) the body-worn camera footage from Plancarte's arrest; and (3) the police reports from the officer's two previous encounters with Plancarte.  The police report from Plancarte's arrest showed that the officer responded to "a report of a female exposing her breasts while walking around [a gas station] parking lot" and that the officer observed Plancarte walking in the parking lot with her breasts exposed.  The officer's body-worn camera footage from the arrest showed Plancarte pulling down her shirt as the officer approached her, but it did not show Plancarte's exposed breasts.  Lastly, the officer's other police reports showed that the officer had responded to calls about a woman exposing herself and had encountered Plancarte with her underwear exposed on one occasion, and her breasts and underwear exposed on another occasion.

The district court found Plancarte guilty on all charges.  As to the indecent exposure charge, the district court found that Plancarte "exposed private parts of her body (specifically the entirety of her breasts)" and that she did so "willfully (the exposure was intentional and not accidental) and lewdly (the exposure was 'legally obscene')."  In addressing the lewdness element of the crime, the district court found that Plancarte "was not engaged in any type of overt public sexual activity or sexual contact with others in

---

[1]     Minnesota Rule of Criminal Procedure 26.01, subdivision 3, allows the defendant and the prosecutor in a case to agree to the facts or evidence in the case and submit those facts or evidence to the district court to determine the defendant's guilt.  Minn. R. Crim. P. 26.01, subd. 3(a).

addition to the exposure itself." But the district court nevertheless characterized Plancarte as an "exhibitionist" and concluded that her "exhibitionism [was] motivated by an urge for sexual arousal / gratification." The district court sentenced Plancarte to 90 days in jail with credit for time served.[2] Plancarte appealed, challenging only her indecent exposure conviction.

The court of appeals affirmed Plancarte's conviction in a divided opinion. *State v. Plancarte*, 3 N.W.3d 34 (Minn. App. 2024). Although a majority of the three-judge panel agreed to affirm the conviction, the two judges in the majority did not agree on a rationale. One judge concluded that the evidence was sufficient to support Plancarte's conviction because "[a] woman's fully exposed breasts are 'private parts' " under the statute and "[t]he district court had a sufficient factual and legal basis to treat Plancarte's exposure as lewd." *Id.* at 38, 42 (Ross, J.). The other judge in the majority agreed that the evidence was sufficient to prove that Plancarte's conduct was lewd but concluded that Plancarte had exposed her "body," rather than her "private parts." *Id.* at 45–46 (Schmidt, J., concurring). The final judge dissented, reasoning that the statute requires lewd conduct in addition to

---

[2] When pronouncing a sentence for a convicted offense, the district court must determine the number of days the offender has served in connection with that offense and deduct those days from the offender's period of incarceration. Minn. Stat. § 609.145 (2024); Minn. R. Crim. P. 27.03, subd. 4(B). At the time of sentencing, Plancarte had already served 146 days in custody in connection with her convicted offenses. Accordingly, Plancarte had already satisfied her 90-day sentence for indecent exposure when the district court executed the sentence. As for the controlled-substance charge, the district court stayed adjudication of that charge on probationary terms.

exposure and that the evidence was insufficient to show that Plancarte acted lewdly. *Id.* at 51 (Bratvold, J., dissenting).[3]

Plancarte petitioned this court for review of three issues: (1) whether female breasts are "private parts" under the indecent exposure statute; (2) whether the evidence was sufficient to prove that Plancarte "lewdly" exposed her breasts in violation of the statute; and (3) whether the statute violates the federal and state guarantees of equal protection under the law. We granted her petition.

**ANALYSIS**

Plancarte argues that the evidence was insufficient to support her conviction of indecent exposure because she did not "lewdly" expose her "body, or the private parts thereof" when she exposed her breasts in public. In the alternative, Plancarte contends that her conviction under the indecent exposure statute violates her right to equal protection under the law.

To secure a conviction of indecent exposure under section 617.23, subdivision 1(1), the State must prove beyond a reasonable doubt that the defendant "willfully and lewdly expose[d]" their "body, or the private parts thereof," in a "public place" or a "place where others are present." Exposure of "the person's body, or the private parts thereof" alone is

---

[3] Both judges in the majority determined that the equal protection issue was resolved by *State v. Turner*, 382 N.W.2d 252 (Minn. App. 1986). *Plancarte*, 3 N.W.3d at 44 (Ross, J.); *id.* at 46 (Schmidt, J., concurring). In *Turner*, the court of appeals held that a Minneapolis ordinance that prohibited the exposure of the female breast but not the male breast did not violate equal protection law. 382 N.W.2d at 255–56. The dissent did not reach the equal protection issue except to conclude that *Turner* did not resolve the issue. *Plancarte*, 3 N.W.3d at 56–57 (Bratvold, J., dissenting).

insufficient. If the State fails to present evidence sufficient to prove that the exposure was willful, lewd, and in a public place or a place where others are present, then the defendant's conviction under the statute must be reversed. *See* Minn. Stat. § 617.23, subd. 1(1); *State v. Stevenson*, 656 N.W.2d 235, 240 (Minn. 2003). For the reasons set out below, we conclude that the State did not present evidence sufficient to prove "lewd" exposure. Given that conclusion, we need not interpret the statutory phrase "body, or the private parts thereof" or decide the equal protection issue raised by Plancarte, and we decline to do so.[4] As we have explained before, we generally "avoid a constitutional ruling if there is another basis on which a case can be decided." *State v. Bourke*, 718 N.W.2d 922, 926 (Minn. 2006) (citation omitted) (internal quotation marks omitted).

"A claim of insufficient evidence that turns on the meaning of the statute under which the defendant was convicted presents an issue of statutory interpretation that we review de novo." *State v. Moore*, 10 N.W.3d 676, 680 (Minn. 2024) (citation omitted) (internal quotation marks omitted). Second, "[a]fter we interpret the statute, we analyze the record to determine whether the evidence, viewed in the light most favorable to the verdict, was sufficient to permit the [fact-finder's] verdict." *Id.*

---

[4]    The State did not charge Plancarte under section 617.23, subdivision 1(3), which prohibits a person from "engag[ing] in any open or gross lewdness or lascivious behavior, or any public indecency other than behavior specified in this subdivision." We express no view on whether Plancarte's conduct may have run afoul of subdivision 1(3) or any other criminal statute.

## I.

We interpret statutes to ascertain and effectuate the Legislature's intent. *Fordyce v. State*, 994 N.W.2d 893, 897 (Minn. 2023); *see also* Minn. Stat. § 645.16 (2024). If the language of a statute is clear on its face, then the statute is unambiguous, and we apply its plain meaning. *State v. Pakhnyuk*, 926 N.W.2d 914, 920 (Minn. 2019). But if the statutory language "is susceptible to more than one reasonable interpretation, then the statute is ambiguous," and we resolve the ambiguity by applying relevant canons of statutory construction. *Fordyce*, 994 N.W.2d at 897 (citation omitted) (internal quotation marks omitted). The question here is what the Legislature intended when it used the word "lewdly" in the indecent exposure statute.

## A.

We begin by considering whether "lewdly" is ambiguous in the context of the statute. To determine whether a statute is ambiguous—that is, subject to more than one reasonable interpretation—we construe the statute as a whole and interpret relevant terms in their context. *State v. Alarcon*, 932 N.W.2d 641, 646 (Minn. 2019). If the Legislature has not defined a term, "we may consider dictionary definitions to determine [its] common usage." *State v. Cummings*, 2 N.W.3d 528, 533 (Minn. 2024).

The indecent exposure statute prohibits a person from "willfully and lewdly" exposing their "body, or the private parts thereof" in a "public place" or a "place where others are present." Minn. Stat. § 617.23, subd. 1(1). The statute does not define "lewdly," nor have we interpreted it in this context. *See* Minn. Stat. § 617.23; *see also* Minn.

Stat. §§ 617.23–.299 (2024). We therefore start by considering various definitions of "lewdly" to ascertain its common usage. *See Cummings*, 2 N.W.3d at 533.

Plancarte argues that definitions across time show that "lewdly" describes an act that is "overtly sexual and that patently violates community mores surrounding sexual activity." The State contends that "lewdly" describes conduct that is "openly lustful or indecent," based on a court of appeals case that cites an applicable dictionary definition. But neither party directly addresses whether "lewdly" is ambiguous.

Based on our independent review, we are persuaded that "lewdly" is ambiguous in the context of the indecent exposure statute. At least four common usages of "lewdly" are reasonable under the statute. Several dictionaries define "lewd" (the root of "lewdly") to mean "obscene," "indecent," and "lustful," as well as "[p]reoccupied with sex and sexual desire."[5] Other state supreme courts have relied on these and similar definitions to determine the statutory meaning of "lewd." *See, e.g.*, *State v. Bagnes*, 322 P.3d 719, 723 (Utah 2014) (relying on dictionary definitions of "lewd" to interpret the relevant statutory term); *People v. Graves*, 368 P.3d 317, 327–28 (Colo. 2016) (same); *State ex rel. Rear Door Bookstore v. Tenth Dist. Ct. of Appeals*, 588 N.E.2d 116, 121 (Ohio 1992) (same). At least one of these courts has concluded that "lewd[]" conduct means "misconduct of a sexual nature." *Bagnes*, 322 P.3d at 723; *see also Graves*, 368 P.3d at 328 (interpreting

---

[5] *See, e.g.*, *Lewd*, *Black's Law Dictionary* 1089 (12th ed. 2024) (defining "lewd" as "[o]bscene or indecent"); *American Heritage Dictionary of the English Language* 1010 (5th ed. 2011) (defining "lewd" as "[p]reoccupied with sex and sexual desire; lustful . . . [o]bscene; indecent"); *American Heritage College Dictionary* 780 (3d ed. 2000) (defining "lewd" as "[p]reoccupied with sex and sexual desire; lustful . . . [o]bscene; indecent").

10

"lewd" conduct to mean "conduct of an overtly sexualized nature"). We find these interpretations to be an accurate distillation of definitions that describe "lewd" conduct. We therefore conclude that "lewd" is commonly defined as "obscene," "indecent," "lustful," and "of a sexual nature." Because all four of these usages are reasonable in the indecent exposure statute, we conclude that the term "lewd" is ambiguous in this context.[6]

B.

"When a statute is ambiguous, we may consider additional canons of construction to ascertain the intention of the Legislature." *Fordyce*, 994 N.W.2d at 899. These canons include, among others, those pertaining to "related statutes," "the mischief to be remedied," "the object to be attained," and "former law." *Id.*; *State v. Beganovic*, 991 N.W.2d 638, 645 (Minn. 2023); *State v. Velisek*, 986 N.W.2d 696, 701 (Minn. 2023); *see also* Minn. Stat. § 645.16. We also apply the "canon of constitutional avoidance . . . where, as here, the statutory language is ambiguous." *State v. Irby*, 848 N.W.2d 515, 521–22 (Minn. 2014). As we explain further below, these canons support a conclusion that the Legislature's use of "lewdly" in this context must be interpreted as conduct of a sexual nature.

---

[6] We are not alone in this assessment. Other state supreme courts have interpreted "lewd" in similar contexts and have noted that the term is susceptible to several reasonable interpretations. *See, e.g.*, *Bagnes*, 322 P.3d at 723 (explaining that "lewdness" has a "range of possible meanings"); *Graves*, 368 P.3d at 327–28 (relying on several dictionary definitions of "lewd" to ascertain the word's common usage); *see also Osborne v. Ohio*, 495 U.S. 103, 119 (1990) (noting that the terms "obscene, lewd, lascivious, indecent, filthy [and] vile . . . have different shades of meaning" but all take "aim[] at obnoxiously debasing portrayals of sex").

11

We begin with the related statutes canon, which "allows us to construe together two statutes that were enacted separately but which share a common purpose and subject matter." *Beganovic*, 991 N.W.2d at 645. Comparing the indecent exposure statute with the obscenity statute shows that "lewd" and "obscene" have distinct meanings under the law. As discussed above, the indecent exposure statute, section 617.23, subdivision 1(1), prohibits a person from "willfully and lewdly exposing [their] body, or the private parts thereof." By contrast, the obscenity statute, Minnesota Statutes section 617.241, subdivision 2 (2024), makes it a crime to exhibit, publish, or distribute "obscene material." Although these statutes are united by a common purpose—protecting the public from offensive displays of sexual conduct—they contain different language. *See Fordyce*, 994 N.W.2d at 900 ("The purpose of the indecent-exposure statute is . . . to curb the offense or annoyance or even fear others may experience when they view lewd conduct . . . ." (emphasis omitted)); *State v. Welke*, 216 N.W.2d 641, 646–47 (Minn. 1974) (explaining that "legislative enactments regulating or prohibiting obscenity" address "articles and publications which are patently offensive representations or descriptions of ultimate sexual acts" as well as "patently offensive representations or descriptions of masturbation, excretory functions, and lewd exhibition of the genitals"). While the indecent exposure statute prevents a person from "lewdly" exposing themself, the obscenity statute prevents a person from producing "obscene" material. The Legislature's decision to criminalize "lewd" conduct in section 617.23 and "obscene" material in section 617.241 suggests that the Legislature intended for "lewdly" and "obscene" to have distinct meanings. *See State v. Thonesavanh*, 904 N.W.2d 432, 437 (Minn. 2017)

(explaining that we construe "two statutes with common purposes and subject matter . . . together to determine the meaning of ambiguous statutory language"). Accordingly, the related statutes canon favors interpreting "lewdly" to mean something other than "obscene."

We also note that distinguishing between "lewd" conduct and "obscene" material makes good sense because "obscene" materials and "lewd" conduct are treated differently under the law. Unlike the term "lewd," the term "obscene" has acquired special judicial meaning. *Welke*, 216 N.W.2d at 645–47 (discussing *Miller v. California*, 413 U.S. 15 (1973)). For material to be "obscene" under Minnesota law, the material must "depict[] or describe[], in a patently offensive way, sexual conduct . . . that to the average person, applying contemporary community standards . . . appeals to the prurient interest" and "lacks serious literary, artistic, political, or scientific value." *Welke*, 216 N.W.2d at 647; *see also* Minn. Stat. § 617.241, subd. 1(a) (2024) (" 'Obscene' means that the work, taken as a whole, appeals to the prurient interest in sex and depicts or describes in a patently offensive manner sexual conduct and which, taken as a whole, does not have serious literary, artistic, political, or scientific value"). This standard ensures that "statutes designed to regulate obscene materials [are] carefully limited" and do not infringe on individuals' freedom of speech and expression. *Miller*, 413 U.S. at 23–24; *see also Welke*, 216 N.W.2d at 645. The same standard does not apply to state regulation of "lewd public conduct," which "[s]tates have greater power to regulate" because some lewd conduct is not protected by the First Amendment. *Miller*, 413 U.S. at 23–26, 26 n.8; *see State v. Casillas*, 952 N.W.2d 629, 637–39 (Minn. 2020). Because states have broader authority

13

to regulate in-person sex and nudity than they do depictions of the like, the Legislature's decision to prohibit "lewd[]" conduct in the indecent exposure statute but "obscene" material in the obscenity statute suggests that the terms have distinct meanings, despite the dictionary definitions that equate them.

The mischief to be remedied and the object to be attained by the indecent exposure statute lead us to the same conclusion. When it passed the indecent exposure statute, "[t]he Legislature sought to remedy the mischief of people lewdly exposing themselves to others, that is, to curb the offense or annoyance or even fear others may experience when they view lewd conduct." *Fordyce*, 994 N.W.2d at 900 (emphasis omitted). We have further concluded that the mischief to be remedied by the indecent exposure statute "weighs in favor of interpreting the statute broadly enough to encompass conduct that is reasonably capable of being viewed by unwilling observers who may suffer annoyance or offense from the sight of the lewd exposure of another." *Id.* at 901 (emphasis omitted). Likewise, we have held that the "object" of the indecent exposure statute is "to prevent the offense or annoyance one may experience from being exposed to the lewd conduct of others." *Id.* Interpreting "lewdly" to mean "obscene" would contravene this broad purpose by importing obscenity law (which sets a higher bar for obscene material) into indecent exposure law (which sets a lower bar for lewd conduct). *Compare Welke*, 216 N.W.2d at 646–47 (adopting a three-part obscenity test), *with Fordyce*, 994 N.W.2d at 901 (describing the "object" of the statute as "prevent[ing] . . . offense or annoyance"). Accordingly, the mischief to be remedied and the object to be attained by the statute favor interpreting "lewdly" to mean something other than "obscene."

Our review of former law also supports this interpretation. Former law includes "past versions of the law at issue." *Velisek*, 986 N.W.2d at 701; *see also State v. Al-Naseer*, 734 N.W.2d 679, 686–87 (Minn. 2007) (relying on an earlier version of a statute to ascertain legislative intent). Minnesota's indecent exposure statute, and its use of "lewdly," dates to 1885, when Minnesota imported parts of the New York Penal Code into its own penal code. *See* Minn. Penal Code § 275 (1885) (criminalizing indecent exposure); *New State Penal Code*, Minneapolis Trib., Feb. 12, 1883 (explaining that Minnesota's proposed penal code was "substantially the same as" New York's penal code). New York's penal code was based in part on English common law. *See* Raymond H. Arnot, The Progress of Law Reform in New York, 43 Am. L. Rev. 53, 62 (January–February 1909) (explaining that, before New York enacted its penal code, "the definitions laid down in the Revised Statutes and in fugitive acts were, together with common law rules, the sole authority for delimiting crime and for the trial of criminals"). Accordingly, English common law is instructive when interpreting New York's penal code and, by extension, Minnesota's penal code. English common law defined "lewdness" as "the irregular indulgence of lust or other sexually oriented behavior that is indecent or offensive in a public place." *In re L.G.W.*, 641 P.2d 127, 131 (Utah 1982).

The common law understanding of lewdness comports with dictionaries from the 1880s, which define "lewd" to mean "sexual" or "lustful."[7] It also reflects our case law.

---

[7] *See, e.g.*, *Webster's Practical Dictionary of the English Language* 225 (Gardner ed., 1884) (defining "[l]ewd" as "[g]iven to the unlawful indulgence of lust; eager for sexual indulgence; proceeding from or expressing lust; libidinous; profligate; dissolute;

*See In re Welfare of H.M.P.W.*, 281 N.W.2d 188, 190 n.1 (Minn. 1979) (defining "lewd" to mean "lustful, libidinous, [and] unchaste" when interpreting a different statute). And it aligns with other jurisdictions' interpretations of similar terms, which we find persuasive here. *See Lorix v. Crompton Corp.*, 736 N.W.2d 619, 629 (Minn. 2007) ("We will often look to case law from other states for guidance when our own jurisprudence is undefined."). The Supreme Court of Utah, for example, has defined "lewdness" as "misconduct of a sexual nature." *Bagnes*, 322 P.3d at 723. The Supreme Court of Colorado has defined "lewd fondling or caress" as "lascivious conduct of an overtly sexualized nature." *Graves*, 368 P.3d at 328. And the Supreme Court of Vermont has approved a trial court's jury instruction defining "lewd and lascivious behavior" as "behavior that is sexual in nature, lustful, or indecent." *State v. Penn*, 845 A.2d 313, 316 (Vt. 2003). Taken together, former law favors interpreting "lewdly" to encompass conduct that is of a sexual nature, lustful, or indecent.

The canon of constitutional avoidance, however, requires us to further limit the meaning of the term "lewdly" in the indecent exposure statute. We generally construe statutes to avoid constitutional confrontations. *State v. Leonard*, 943 N.W.2d 149, 160 (Minn. 2020). This includes confrontations with the Due Process Clauses of the United States and Minnesota Constitutions, which require criminal statutes to be sufficiently definite to warn ordinary people of what conduct is prohibited in a manner that prevents

---

lascivious; lecherous"); *A Dictionary of the English Language* 555 (Stormonth & Phelp eds., 1885) (defining "lewd" as "given to lustful indulgence; dissolute; licentious; impure").

arbitrary and discriminatory enforcement. *Kolender v. Lawson*, 461 U.S. 352, 357 (1983); *State v. Davidson*, 481 N.W.2d 51, 56 (Minn. 1992). Accordingly, a statute is unconstitutionally vague " 'if it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits' " or " 'if it authorizes or even encourages arbitrary and discriminatory enforcement.' " *State v. Ness*, 834 N.W.2d 177, 184 (Minn. 2013) (quoting *Hill v. Colorado*, 530 U.S. 703, 732 (2000)).

Although "lewdly" in the indecent exposure statute has a broader meaning than "obscene," defining "lewdly" as "indecently" or "lustfully" threatens to undermine due process by failing to put the public on notice of the kinds of acts that are prohibited by the statute. Indeed, federal courts have invalidated statutes prohibiting "indecent" conduct where "indecent" is undefined, because the term is too broad and invites arbitrary enforcement. *See, e.g.*, *United States v. Williams*, 553 U.S. 285, 306 (2008); *D.C. v. City of St. Louis*, 795 F.2d 652, 654–55 (8th Cir. 1986). Likewise, what is "lustful" is often in the eye of the beholder, and interpreting "lewdly" to mean "lustfully" could lead to the arbitrary enforcement of the indecent exposure statute. Such an interpretation may also result in discriminatory enforcement based on harmful gender stereotypes. To avoid these constitutional concerns, we decline to interpret "lewdly" to mean "indecently" or "lustfully." *See Leonard*, 943 N.W.2d at 160.

Having declined to interpret "lewdly" to mean "obscene," "indecently," or "lustfully," we are left with one reasonable interpretation of the term: of a sexual nature. We therefore conclude that "lewdly" refers to conduct of a sexual nature.

*        *        *

17

The language chosen by the Legislature makes clear that—without more—mere exposure of a person's "body, or the private parts thereof," is insufficient to prove the lewdness element of indecent exposure. As the court of appeals dissent emphasized, such an interpretation would "excise[] 'lewdly' from the indecent-exposure statute and render[] the term void. . . ." *Plancarte*, 3 N.W.3d at 49 (Bratvold, J., dissenting). We decline to ignore legislative intent by reading words out of a duly enacted statute. *See Rushton v. State*, 889 N.W.2d 561, 564 (Minn. 2017) (explaining that we must "interpret a statute as a whole so as to harmonize and give effect to all its parts") (citation omitted) (internal quotation marks omitted)). Because the canons of statutory construction favor an interpretation of "lewdly" that is broader than equating the term with "obscene" but is appropriately narrowed to avoid constitutional due process concerns regarding arbitrary and discriminatory enforcement, we hold that "lewdly" refers to conduct of a sexual nature.[8]

## II.

We now apply our interpretation of "lewdly" to the facts of Plancarte's case to determine whether the State presented evidence sufficient to support her conviction. "In deciding this question, we view the evidence in the light most favorable to the verdict and consider whether the evidence was sufficient to permit the [fact-finder] to reach the verdict that [it] did." *State v. Moore*, 10 N.W.3d 676, 682 (Minn. 2024).

---

[8] To the extent that *State v. Botsford*, 630 N.W.2d 11 (Minn. App. 2001), held that the word "lewdly" is *limited to* obscene conduct in the context of indecent exposure, we overrule it.

Plancarte argues that the evidence was insufficient to prove that she "lewdly" exposed her breasts in the gas station parking lot because she did not commit an "overtly sexual act" at the time of her exposure. Plancarte emphasizes the district court's finding that she "was not engaged in any type of overt public sexual activity or sexual contact with others in addition to the exposure itself." The State asserts that the evidence was sufficient to prove lewd exposure because Plancarte's "public exposure of her body was 'openly lustful' or 'indecent' which makes it 'lewd.'" In making this argument, the State relies on the district court's finding that Plancarte was an "exhibitionist," Plancarte's statements that "Catholic girls [expose their breasts] all the time," and Plancarte's assertion that she is a "stripper at a biker bar."

We agree with Plancarte. For the reasons explained above, we reject the interpretations of "lewdly" that the State proposes in support of Plancarte's conviction. And under the meaning of "lewdly" that applies to the indecent exposure statute, the State has not met its burden of proving that Plancarte's exposure was lewd, because none of the evidence in the record suggests that her conduct was of a sexual nature. Although the police reports establish that Plancarte was charged with indecent exposure three times in one week for exposing some combination of her breasts and underwear, none of these reports provide any insight into the nature of her exposure during those incidents. Moreover, the officer's body-worn camera footage does not capture Plancarte engaging in any conduct of a sexual nature. Finally, Plancarte's comment about being "a stripper" and her assertion that "Catholic girls [expose their breasts] all the time" are not evidence that her *conduct* in this instance was of a sexual nature. At most, Plancarte's statements speak

19

to her subjective mental state when she was exposing her breasts, which is irrelevant to determining whether her *conduct* was lewd. As we explained in *State v Jama*, "it is the nature and location of the exposure that impacts the certainty of the observation—not the [defendant's] subjective intent." 923 N.W.2d 632, 636 (Minn. 2019) (emphasis omitted). Indeed, the district court itself acknowledged that Plancarte's conduct was not of a sexual nature when it expressly found that she "was not engaged in any type of overt public sexual activity or sexual contact with others in addition to the exposure itself."

In conclusion, even viewed in the light most favorable to the verdict, the evidence presented in the stipulated-evidence trial does not prove beyond a reasonable doubt that Plancarte engaged in conduct of a sexual nature. We therefore hold that the State failed to present evidence sufficient to prove that Plancarte "lewdly" exposed her breasts in violation of the indecent exposure statute. Because this holding fully resolves this case, we need not interpret the statutory phrase "body, or the private parts thereof," or decide the equal protection issue.[9]

## CONCLUSION

For the foregoing reasons, we reverse the decision of the court of appeals.

Reversed.

GAÏTAS, J., took no part in the consideration or decision of this case.

---

[9] As noted by Plancarte and the concurrence, certain definitions of "private parts" may raise constitutional concerns. Because we do not define "private parts" under the statute, we have no occasion to address those constitutional concerns.

CONCURRENCE

HENNESY, Justice (concurring).

I agree with the majority's conclusion that the State failed to present evidence sufficient to prove that Plancarte "lewdly" exposed her breasts in violation of the indecent exposure statute, but I would also hold that breasts are not a person's "body, or the private parts thereof" under Minnesota's indecent exposure statute.

One of Plancarte's primary arguments to this court is that the phrase "body, or the private parts thereof" does not include breasts. The court of appeals panel was divided as to this question. In affirming Plancarte's conviction, the lead opinion took the position that breasts are "private parts" within the meaning of Minnesota Statutes section 617.23, subdivision 1(1) (2024). *State v Plancarte*, 3 N.W.3d 34, 38 (Minn. App. 2024) (Ross, J.). A separate opinion concurred in the result but would have found that Plancarte's exposure of her breasts constituted exposure of her "body" under the statute, rather than reaching whether breasts are private parts. *Id.* at 45–46 (Schmidt, J., concurring). The dissenting judge, without directly addressing whether Plancarte had exposed her "body, or the private parts thereof," emphasized that she could not "subscribe to a rule of law" that categorically prohibits the public exposure of a woman's breasts because such a rule raised serious constitutional concerns. *Id.* at 50 (Bratvold, J., dissenting). The division within that panel as to whether the statute prohibits exposing women's breasts demonstrates the difficulty law enforcement and district courts may continue to have in interpreting and applying this statute without further clarification. This is a problem we could solve here. By answering the broader question of whether breasts are a person's "body" or "private parts" within the

C-1

meaning of the statute, we could provide concrete guidance to law enforcement and promote consistent, nondiscriminatory application of the law.

The State charged Plancarte with indecent exposure for "the exposure of [her] body, or the private parts thereof." Minn. Stat. § 617.23, subd. 1(1). The statute does not define "body" or "private parts," and we have never interpreted these terms. I evaluate both, beginning with "body."

The court of appeals considered two possible interpretations of "body": (1) the entire body, or (2) any part of the entire body. To determine whether "body" is ambiguous, I begin with "the text, structure, and punctuation" of the statute. *See State v. Khalil*, 956 N.W.2d 627, 634 (Minn. 2021). In this sentence, "the private parts thereof" means the private parts of a person's body. Therefore, for "the private parts thereof" to retain its meaning, "body" must mean "the entire body." *See Allan v. R.D. Offutt Co.*, 869 N.W.2d 31, 33 (Minn. 2015) (noting that in statutory interpretation, "no word, phrase, or sentence should be deemed superfluous, void, or insignificant" (citation omitted) (internal quotation marks omitted)). Interpreting "body" to mean "any part of the body" would change the meaning of the statute from "the private parts of a person's body" to "the private parts of any part of a person's body." Because individual body parts do not have their own private parts, this definition is inconsistent with the plain language of the statute. *See State v. Clark*, 755 N.W.2d 241, 249 (Minn. 2008) ("[W]ords and phrases are construed according to rules of grammar and according to their common and approved usage."). Likewise, interpreting "body" to mean "any part of the body" would require either adding "any part of" to the statute or removing "the private parts thereof" from the statute, which this court

C-2

may not do. *Johnson v. Cook County*, 786 N.W.2d 291, 295 (Minn. 2010) (providing that this court "may not add words to a statute . . ."); *State v. Thonesavanh*, 904 N.W.2d 432, 437 (Minn. 2017) (explaining that this court "giv[es] each word or phrase in a statute a distinct . . . meaning"). I would therefore hold that "body" unambiguously means a person's entire body and hold that the State did not prove that Plancarte exposed her body within the meaning of Minnesota Statutes section 617.23, subdivision 1(1).

Having determined that the plain language of "body" in the statute prohibits a person from exposing their *entire* body, the next consideration is what is meant by "private parts." Because we have never interpreted this phrase, we may consider dictionary definitions to ascertain its common usage. *State v. Cummings*, 2 N.W.3d 528, 533 (Minn. 2024). According to multiple dictionary definitions, "private parts" is commonly used to refer to a person's genitals.[10] The term "genitals" means a person's reproductive and excretory

---

[10] *See, e.g.*, *American Heritage Dictionary of the English Language* 1402 (5th ed. 2011) (defining "private parts" as "[t]he external organs of sex and excretion"); *Merriam-Webster's Collegiate Dictionary* 988 (11th ed. 2020) (defining "private parts" as "the external genital and excretory organs"); *New Oxford American Dictionary* 1390 (3d ed. 2010) (defining "private parts" as being "used euphemistically to refer to a person's genitals"); *Webster's Third New International Dictionary* 1645, 1805 (2002) (defining "private parts" as "the external genital and excretory organs").

organs.[11]  Because breasts are neither reproductive organs nor excretory[12] organs, breasts are not private parts.

While these definitions indicate that the phrase "private parts" does not include breasts, the lead opinion in the court of appeals reasoned that the breastfeeding exception in subdivision 4 of the statute must mean that the legislature intended subdivision 1(1) to encompass female breasts.  *Plancarte*, 3 N.W.3d at 38 (Ross, J.).  That subdivision provides: "It is not a violation of this section for a woman to breastfeed."  Minn. Stat. § 617.23, subd. 4 (2024).  If female breasts are not "private parts," according to the court of appeals' lead opinion, there would be no reason for the legislature to include an explicit exception for breastfeeding.  *Plancarte*, 3 N.W.3d at 38.  This reasoning overlooks the fact that the language of the breastfeeding exception is needed to except breastfeeding from subdivision 1(3), which makes it a misdemeanor to engage "in any open or gross lewdness

---

[11]  *See*, *e.g.*, *American Heritage Dictionary of the English Language* 733 (5th ed. 2011) (defining "genitals" as "[t]he reproductive organs, especially the external reproductive organs and associated structures in humans and other mammals"); *Merriam-Webster's Collegiate Dictionary* 521 (11th ed. 2020) (defining "genital" as "of, relating to, or being a sexual organ").

[12]  *See*, *e.g.*, *American Heritage Dictionary of the English Language* 620 (5th ed. 2011) (defining "excretory" as "[o]f, relating to, or used in excretion: *excretory organs*"); *id*. (defining "excretion" as "[t]he act or process of discharging waste matter from the blood, tissues, or organs . . . .  The matter, such as urine or sweat, that is so excreted"); *Webster's Third New International Dictionary* 794 (2002) (defining "excretory" as "of, relating to, concerned with, or serving for excretion"); *id*. at 793–94 (defining "excretion" as "the process of eliminating useless, superfluous, or harmful matter (as the waste products of metabolism) from the body of an organism . . . .  [S]omething eliminated by the process of excretion comprising chiefly the urine and sweat in man and other mammals . . . differing from ordinary bodily secretions by lacking any further utility to the organism that produces it").

or lascivious behavior, or any public indecency other than behavior specified in this subdivision."  Minn. Stat. § 617.23, subd. 1(3) (2024).  The breastfeeding exception ensures that the State does not prosecute a woman for "open or gross lewdness or lascivious behavior, or any public indecency other than behavior specified in this subdivision" for breastfeeding her child.  This reading of the statute does not render the breastfeeding exception superfluous even if we define "private parts" to exclude breasts.  As the court of appeals dissent put it: "The legislature's decision to exempt breastfeeding from criminal sanction means that breastfeeding is not lewd.  The legislature did not say that nude breasts are lewd if those breasts are not involved in breastfeeding."  *Plancarte*, 3 N.W.3d at 50 (Bratvold, J., dissenting).

To the extent that the definition of "private parts" remains ambiguous, we "may consider additional canons of construction to ascertain the intention of the Legislature." *Fordyce v. State*, 994 N.W.2d 893, 899 (Minn. 2023); *see also* Minn. Stat. § 645.16 (2024). The "related statutes canon" allows us to "construe together two statutes that were enacted separately but which share a common purpose and subject matter."  *State v. Beganovic*, 991 N.W.2d 638, 645 (Minn. 2023); *see also State by Smart Growth Minneapolis v. City of Minneapolis*, 954 N.W.2d 584, 591 (Minn. 2021) ("We have a general policy of harmonizing statutes dealing with the same subject matter." (citation omitted) (internal quotation marks omitted)).  Reading section 617.23 in harmony with other related statutes supports a narrow interpretation of private parts—one that excludes breasts.  Chapter 617, which includes the indecent exposure statute and other statutes related to obscenity, distinguishes between "private parts" and "intimate parts."  While the indecent exposure

statute uses the term "private parts," Minnesota Statutes section 617.261, subdivision 1 (2024), prohibits nonconsensual dissemination of images of a person's "intimate parts." This section defines "intimate parts" as "the genitals, pubic area, or anus of an individual, or if the individual is female, a partially or fully exposed nipple." Minn. Stat. § 617.261, subd. 7(e) (2024); *see also* Minn. Stat. § 617.262, subd. 1(f) (2024) (using a similar definition of "intimate parts," but also including the partially or fully exposed nipple of any individual regardless of gender). Minnesota Statutes section 609.341, the section containing definitions pertinent to sex crimes, uses a similar definition of intimate parts. This section defines "[i]ntimate parts" as "the primary genital area, groin, inner thigh, buttocks, or breast of a human being." Minn. Stat. § 609.341, subd. 5 (2024). The language of these statutes demonstrates that the Legislature knows how to use the terms "breast" or "nipple" when it means to. Interpreting "private parts" to include female breasts would obscure the distinction between "private parts" and "intimate parts" that the Legislature has chosen to use.

Further, to the extent that the definition of private parts is ambiguous, it is appropriate for us to consider the consequences of our interpretation. *State v. Moore*, 10 N.W.3d 676, 681 (Minn. 2024). Interpreting "private parts" to include female—and not male—breasts would lead to the continued stigmatization of female breasts as inherently sexual and reinforce the sexual objectification of women. As other courts have recognized, the idea that female breasts are primarily sexual is rooted in stereotypes. *See, e.g.*, *Free the Nipple-Fort Collins v. City of Fort Collins*, 916 F.3d 792, 803 (10th Cir. 2019) (relying on expert testimony that "our society's sexualization of women's breasts—rather than any

unique physical characteristic—has engrained in us the stereotype that the primary purpose of women's breasts is sex, not feeding babies"). This stereotype harms people of all genders. *Id.* at 803 ("perpetuating the sex-object stereotype 'leads to negative cognitive, behavioral, and emotional outcomes for both women and men.' " (citation omitted)); *Eline v. Town of Ocean City*, 7 F.4th 214, 227 (4th Cir. 2021) (Gregory, C.J., concurring) ("By treating women's breasts (but not those of men) as forbidden in public sight, these laws may reduce women's bodies to objects of public gaze, reproduce the Victorian-era belief that women should be seen but not heard, and reinforce stereotypes that sexually objectify women rather than treating them as people in their own right."). As amicus curiae Gender Justice persuasively argues, interpreting "private parts" to include female breasts "reinforc[es] the harmful stereotype that female breasts are, above all else, sexual objects and inherently lewd . . . ."

In addition to these harmful consequences, interpreting "private parts" to include breasts raises serious constitutional concerns. We presume statutes are constitutional and invalidate them only when absolutely necessary. *State v. Leonard*, 943 N.W.2d 149, 160 (Minn. 2020). Accordingly, we construe statutes to avoid constitutional defects. *Id.* If a statute "is reasonably susceptible [to] two different constructions, one of which would render it constitutional and the other unconstitutional, we must adopt the one making it constitutional." *In re Cold Spring Granite Co.*, 136 N.W.2d 782, 787 (Minn. 1965). Indeed, this court has applied the canon of constitutional avoidance to prevent even a *potential* constitutional conflict. *In re Giem*, 742 N.W.2d 422, 429 (Minn. 2007).

Interpreting Minnesota Statutes section 617.23, subdivision 1(1), to encompass exposing breasts would raise a significant due process concern.

The Minnesota and United States Constitutions require that criminal statutes meet "due process standards of definiteness." *State v. Newstrom*, 371 N.W.2d 525, 528 (Minn. 1985). Due process requires that statutes imposing criminal penalties are "sufficiently clear and definite to warn a person of what conduct is punishable." *State v. Davidson*, 481 N.W.2d 51, 56 (Minn. 1992). Statutes that fail this requirement are unconstitutionally vague. *Id.* at 55–56. The goal of this constitutional requirement is "to prevent arbitrary, standardless enforcement." *Id.* (citing *Kolender v. Lawson*, 461 U.S. 352, 357 (1983)). The majority wisely addresses this concern with respect to the definition of "lewd." The majority declines to define "lewd" to include "lustful," noting that what is lustful is in the eye of the beholder. I agree with the majority that lewdness requires conduct of a sexual nature. As applied to genitals, I think this definition avoids the concern of unconstitutional vagueness. Genitals are, by definition, "the external organs of sex," and whether their deliberate exposure is "conduct of a sexual nature" lends itself to few interpretative concerns. *See American Heritage Dictionary of the English Language* 1402 (5th ed. 2011) (defining "private parts" as "[t]he external organs of sex and excretion"). Female breasts, on the other hand, are sexualized by societal stereotypes, and there is a great risk—an unacceptable risk, in my view—that any determination of whether their exposure constitutes "conduct of a sexual nature" will be based on oversimplified beliefs or assumptions based on gender. *See Free the Nipple-Fort Collins*, 916 F.3d at 803. While I

agree with the majority's interpretation of the word "lewd," I remain concerned about the application of "lewdness" to breasts in future cases.

In this case, it is clear the State failed to present evidence sufficient to prove that Plancarte's conduct was lewd, as the district court expressly found that Plancarte "was not engaged in any type of overt public sexual activity or sexual contact with others in addition to the exposure itself." Future cases may not be so clear. Undoubtedly, reasonable minds will differ in determining what constitutes engaging in "conduct of a sexual nature" when breasts are exposed; for example, if a woman exposes her breast while dancing, is she engaged in conduct of a sexual nature? How do we know that such conduct is sexual? Does the determination depend on the way she is dancing? Absent any clearer standard, enforcement may be based on the viewer's subjective interpretation of whether a person's conduct is sexual. This uncertainty could lead to inconsistent and discriminatory enforcement.

Further, criminalizing the exposure of female—but not male—breasts does not provide Minnesotans with adequate notice as to the conduct the indecent exposure statute prohibits because a binary approach to breasts fails to recognize the more nuanced physical realities of human bodies, whether they are intersex, transgender, nonbinary, or breast cancer survivors. Would a transgender man be prohibited from exposing his chest? What about a transgender woman who has had top surgery? Where do the chests of intersex and nonbinary persons fit within this dichotomy? And how do we treat the exposed chest of a breast cancer survivor who has had a mastectomy? Interpreting this statutory scheme as differentiating between male and female breasts is not sufficiently clear and definite to

warn Minnesotans of what conduct is punishable. To avoid unconstitutional vagueness, I would interpret "private parts" to exclude breasts.

Plancarte raises an additional constitutional argument based on the equal protection guarantees of the Minnesota and United States Constitutions. In analyzing this argument, the court of appeals was bound by its previous decision in *State v. Turner*, which rejected an equal protection argument regarding an ordinance that prohibited the public exposure of female—but not male—breasts. 382 N.W.2d 252, 255 (Minn. App. 1986).

The *Turner* court reasoned that "female breasts . . . unlike male breasts, constitute an errogenous [sic] zone and are commonly associated with sexual arousal." *Id.* (quoting *City of Seattle v. Buchanan*, 584 P.2d 918, 920 (Wash. 1978)). The court cited no scientific authority for this proposition, nor did the foreign jurisdiction quoted. Here, Plancarte and Gender Justice cite to scientific evidence that there is no gender difference with respect to breasts' capacity for sexual arousal. On the limited record before us, we are not in a position to analyze whether any anatomical differences in breasts prevent men and women from being similarly situated for an equal protection analysis. I comment on this argument only to express my concern with any continued reliance on *Turner*'s reasoning, based, as it was, on stereotypes and unsupported assertions about the nature of male and female breasts.

Regardless, it is not necessary to engage in an equal protection analysis to conclude that Plancarte did not expose her "body, or the private parts thereof" by exposing her breasts. Interpreting Minnesota Statutes section 617.23, subdivision 1(1), to apply to breasts is inconsistent with the plain text of the statute and the larger statutory scheme, will

perpetuate the sexualization of women and girls, and risks inconsistent and discriminatory enforcement. Other states have reached similar conclusions based on the plain language of their indecent exposure statutes. *E.g.*, *State v. Crenshaw*, 597 P.2d 13, 14 (Haw. 1979) (holding that female breasts are not private parts); *State v. Jetter*, 599 N.E.2d 733, 733 & n.1 (Ohio Ct. App. 1991) (holding that the term "private parts" means genitals and does not include breasts). The sky did not fall in those states, nor do I think it would fall here, given the majority's principled interpretation of "lewdly" and the prohibition against "any public indecency" under subdivision 1(3).

To be clear, it is not my view that the legislature cannot regulate when breasts may be exposed in public. On the contrary, the legislature, as well as local government entities, can craft policies limiting the public exposure of breasts that are consistent with the constitution's due process and equal protection principles. I write separately because as written, Minnesota Statutes section 617.23, subdivision 1(1), does not apply to the exposure of breasts. For the reasons explained above, in addition to holding that the evidence was insufficient to show that Plancarte acted "lewdly," I would interpret "body" to mean a person's entire body, and "private parts" to mean genitals, and also hold that the State failed to prove that Plancarte exposed her "body, or the private parts thereof."


PROCACCINI, Justice (concurring).

I join in the concurrence of Justice Hennesy.